**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Wayne Paul BURKETT, Appellant.**

Superior Court of Pennsylvania.

Submitted July 19, 2010.

Filed Sept. 30, 2010.

Wayne P. Burkett, appellant, pro se.

Richard A. Consiglio, Asst. Dist. Atty., Hollidaysberg, for Com., appellee.

BEFORE: BOWES, ALLEN, and FITZGERALD,* JJ.

OPINION BY BOWES, J.:

Wayne Paul Burkett appeals from the order entered in the Blair County Court of Common Pleas dismissing his first PCRA petition sixteen years after he filed that petition. After careful review, we affirm.

The relevant procedural background of this case is lengthy and complex. On April 12, 1982, Appellant was charged with attempted rape, burglary, recklessly endangering another person, terroristic threats, simple assault and harassment. At the time, Appellant was on bail pending sentencing for two other unrelated criminal cases. In the instant case, Appellant forced his way into the home of a female neighbor. He then began to describe sexual acts that he demanded she perform on him. The victim attempted to escape, but Appellant prevented her first attempt and threatened to slit her throat with a knife he procured from the victim's kitchen. However, the victim again tried to flee and was ultimately successful. She identified Appellant as her attacker from a photographic lineup. The case proceeded to trial and on January 28, 1983, the jury returned guilty verdicts on all charges.

The trial court only sentenced Appellant on June 24, 1985, after Appellant appealed to the federal district court for violations of his speedy trial rights relative to the delay in his sentencing. The federal district court directed the trial court to dispose of Appellant's post-trial motions and sentence Appellant accordingly. Appellant appealed the federal district court determi-nation, seeking his release rather than sentencing.

The Third Circuit Court of Appeals denied his certificate of probable cause to appeal without prejudice to file a new petition in the district court. Subsequently, on August 27, 1985, Appellant filed a federal habeas corpus petition, seeking release based on the delay in sentencing in the case sub judice and in a separate case. The district court and the Third Circuit Court of Appeals determined, relative to the current case, that Appellant had not exhausted his state court remedies.[1] See Burkett v. Cunningham, 826 F.2d 1208 (3d Cir.1987).

The trial court originally sentenced Appellant to sixteen to thirty-two years imprisonment. Appellant filed a direct appeal and this Court affirmed the judgment of sentence. Commonwealth v. Burkett, 364 Pa.Super. 643, 525 A.2d 813 (1987) (unpublished memorandum). Our Supreme Court denied Appellant's petition for allowance of appeal. Commonwealth v. Burkett, 517 Pa. 603, 536 A.2d 1328 (1987). Appellant again sought relief via the federal courts and on January 23, 1988, filed a new federal habeas corpus petition. The district court denied Appellant's claims.

The Third Circuit in an unpublished decision, Burkett v. Fulcomer, 914 F.2d 241 (3d Cir.1990), held that the district court erred in reaching its determination. On remand, the federal district court dismissed the habeas corpus petition. Appellant appealed and the Third Circuit reversed and remanded. Accordingly, Appellant was afforded relief in the nature of a reduction of his sentence to twelve and three-quarter years to twenty-

---

* Former Justice specially assigned to the Superior Court.

1. The court did afford him relief on another case by granting his release because of a five-and-one-half-year delay in sentencing.

eight and three-quarter years imprisonment. *See Burkett v. Fulcomer*, 951 F.2d 1431 (3d Cir.1991).[2] The trial court originally re-sentenced Appellant on September 3, 1992; however, the sentence was not in accordance with the Third Circuit's decision. Subsequently, on January 21, 1993, the trial court re-sentenced Appellant to his current term of incarceration.

Thereafter, on February 2, 1993, Appellant filed a *pro se* PCRA petition. The trial judge recused himself from the matter and a different judge was assigned to the case. The PCRA court eventually appointed a series of nine separate attorneys to the matter. Not until the seventh attorney was appointed was an amended PCRA petition filed. That petition, however, was defective. Prior to that, Appellant's third PCRA counsel filed several motions for discovery. Each time the PCRA court granted those motions, but the Commonwealth either failed to comply or did not submit the correct documentation.

In November 2006, over thirteen years after Appellant originally filed his petition, the PCRA court appointed Appellant's final PCRA attorney. This attorney filed an amended PCRA petition in August 2007. On September 5, 2007, the PCRA court directed the Commonwealth to file an answer, which the Commonwealth failed to do. On April 4, 2008 and August 29, 2008, more than fifteen years after the original filing of Appellant's PCRA, the court conducted an evidentiary hearing. The PCRA court, on March 27, 2009, denied Appellant's PCRA petition. This timely appeal followed. After a *Grazier* hearing, Appellant was permitted to proceed *pro se*. Appellant now raises the following issues for our review.

I. Whether Appellant's due process and equal protection rights under the Pennsylvania and Federal Constitution were violated by the Commonwealth's inordinate delay processing and disposing of Appellant's post conviction relief act petition[.]

A.

Whether the PCRA court erred by not applying the four factors in *Barker v. Wingo*, when determining whether Appellant's due process rights were violated by the post conviction delay[.]

B.

Whether the PCRA court erred [by] attributing the cause of the delay to Appellant, and not to PCRA counsels, the court, and the Commonwealth of Pennsylvania[.]

C.

Whether the PCRA Court erred by failing to treat portion[s] of Appellant's PCRA petition as a *habeas corpus* petition since Appellant's due process claim was not cognizable under [the] post conviction relief act[.]

II. Whether Appellant was denied due process under law when the Commonwealth failed to provide exculpatory evidence contained in police reports through mandatory discovery and knowingly presented false testimony at trial[.]

A.

Whether the PCRA court erred when failing to determine whether two withheld police reports were favorable evidence and Appellant [was] prejudice[d] thereby, and the prosecution knowingly presented false testimony at trial, violat[ing] Appellant's due process right to a fair trial[.]

III. Whether Appellant was denied effective assistance of appellate counsel

---

**2.** Appellant's sentence appears to expire sometime in November 2010, at which point he would no longer be eligible for post-conviction relief.

when appellate counsel failed to raise and preserve on appeal trial counsel's ineffectiveness when trial counsel failed to request a mistrial, object, or request a continuance to investigate a highly prejudicial and suggestive photographic identification of the Appellant, which was used without prior notice to the defense[.]

### A.

Whether [the] PCRA court erred when concluding Appellant's claim was finally litigated[.]

IV. Whether Appellant was effectively denied a direct appeal and constructively denied the assistance of appellate counsel[.]

V. Whether PCRA counsel was ineffective when failing to present testimony of appellate counsel at [the] PCRA evidentiary hearing[.]

Appellant's brief at 4–5.[3]

We address Appellant's first issue and its component parts last, since an analysis of the remaining claims affects our examination of that issue. The second claim leveled on appeal by Appellant is whether the PCRA court erred in concluding that he was not denied due process under the law when the Commonwealth failed to provide exculpatory evidence contained in police reports through mandatory discovery and knowingly presented false testimony at trial.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523 (2009). In evaluating a PCRA

court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Commonwealth v. Colavita*, 993 A.2d 874, 886 (Pa.2010). We may affirm a PCRA court's decision on any grounds if it is supported by the record. *Commonwealth v. Fisher*, 582 Pa. 276, 870 A.2d 864, 870 n. 11 (2005).

■■■ Appellant's argument is that two favorable police reports, which provided a description of the assailant that did not match his description, were withheld and could have demonstrated that two police officers falsely testified. There is no dispute that the prosecution did not turn over the reports prior to or during Appellant's trial. The reports, according to Appellant, would have been valuable evidence to impeach the victim and the police officers involved. In setting forth his argument, Appellant relies on the seminal case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

"A *Brady* violation consists of three elements: (1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of the defendant. No violation occurs if the evidence at issue is available to the defense from non-governmental sources. More importantly, a *Brady* violation only exists when the evidence is material to guilt or punishment, *i.e.*, when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' "

*Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 30 (2008) (citations omitted).

---

3. Appellant's brief exceeds the seventy-page requirement based on our appellate rules. However, he has petitioned to extend the number of pages of his brief. In light of the

lengthy procedural history of Appellant's case, we grant Appellant's request and consider in full his entire brief.

The burden of proof is on the defendant to establish that the Commonwealth withheld evidence. *Commonwealth v. Ly,* 602 Pa. 268, 980 A.2d 61 (2009). A prosecutor is not required to deliver his entire file to defense counsel, nor is a prosecutor's duty to disclose such that it would provide a defendant with a right to discovery. *Id.* To satisfy the prejudice element of a *Brady* violation, the evidence withheld must be material to guilt or punishment. *Id.* Materiality extends to evidence that goes to the credibility of a witness. *Id.* However, the mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish materiality in the constitutional sense. *Commonwealth v. Miller,* 987 A.2d 638 (Pa. 2009).

■■■■ Where the alleged withheld *Brady* evidence would not affect the outcome of the trial in light of other evidence linking the defendant to the crime, the petitioner is not entitled to PCRA relief. *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771, 776 (1995); *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 259 (1998). In determining the materiality of alleged withheld evidence, the court must view the evidence in relation to the record as a whole. In addition, where there are multiple allegations of *Brady* violations, the court must consider the total effect of the alleged violations. *Commonwealth v. Santiago,* 822 A.2d 716 (Pa.Super.2003).

The Commonwealth asserts that the police reports do not contain exculpatory material but rather demonstrate that the victim testified to details at trial that were not contained within those reports. In support of its contention, the Common-wealth cites the plurality decision of our Supreme Court in *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977). In *Cain,* the plurality found that a discrepancy between a witness's trial testimony and a police officer's report based on that witness's recollection of events shortly thereafter did not consist of *Brady* material. The plurality reasoned that the police officer's report was not a verbatim dictation of the witness's statements and could not be used to impeach that witness when the statement was not the witness's own nor signed or adopted by that witness.

■■■■ Insofar as Appellant claims that the evidence was exculpatory for purposes of impeachment of the victim, we find the discussion contained within *Common-wealth v. Cruz–Centeno,* 447 Pa.Super. 98, 668 A.2d 536 (1995), apt. In *Cruz–Centeno,* this Court held that a witness's statement that was not recorded verbatim and was summarized by the officer conducting the interview was not required to be disclosed to the defense. Since the statement in that case was not signed, adopted, or shown to be a verbatim statement, the Commonwealth had no duty to disclose the material. *Id.* As we stated in *Cruz–Centeno,* "[M]ere dissimilarities or omissions in prior statements ... do not suffice as impeaching evidence." *Id.* at 544 (citations omitted). Only where an omission is glaring or significant in the context of the situation is it to be considered inconsistent, thereby allowing cross-examination for purposes of impeachment. *See generally Commonwealth v. Karenbauer,* 552 Pa. 420, 715 A.2d 1086 (1998). Since the inconsistencies alleged in the victim's description to police and her trial testimony are minor,[4] we find that Appellant was not

---

4. The report described the assailant as having black hair and weighing between 115 to 120 pounds. During the trial, the victim opined that her attacker weighed 140 pounds. The victim also reportedly informed an officer who prepared a photographic lineup that her attacker had brown hair.

entitled to the report for purposes of impeaching the victim.

 This, however, does not end our inquiry. Appellant asserts that the reports could have been used to impeach the officers who made the reports. With respect to one of the reports, Appellant contends that the police officer testified regarding the victim's initial description and stated that the victim thought the assailant had facial hair; however, his report contained no such reference. Similarly, Appellant maintains that the second police report at issue omitted information that the officer testified to at trial. Specifically, the officer testified that he contacted the victim over the telephone and obtained a description of the perpetrator prior to preparing a photographic lineup. The officer's report indicated that the officer's supervisor informed him that Appellant was on bail for similar conduct and lived in the area and that the officer created the lineup utilizing Appellant's picture.

 We find that the discrepancy between the officer's testimony regarding facial hair and his report, which omitted that reference, does not rise to the level of an inconsistent statement that could be utilized for impeachment purposes that would mandate disclosure of the report pursuant to *Brady*. However, the second police report contains information that is sufficiently different from the testimony given at trial and is significant in the context in which the report was made; therefore, it could have been used as impeachment evidence against the officer. We do note that the report referenced prior bad acts committed by Appellant and the introduction of that report to impeach the officer would have resulted in evidence of other crimes committed by Appellant being introduced. Thus, even had the report been turned over, counsel could have had a reasonable basis not to utilize it.

Moreover, the victim unequivocally identified Appellant in court as her attacker; she had a prolonged period of interaction with the assailant in which to observe and identify the perpetrator. She also testified that she identified Appellant from a photographic lineup soon after the incident. Accordingly, we hold that disclosure of the report would not have resulted in a different outcome at trial.

 In addition to Appellant's *Brady* claim, he contends that the Commonwealth knowingly presented false testimony. According to Appellant, the Commonwealth knew of the police report that stated the original photographic lineup was constructed based on knowledge of Appellant's prior criminal history, not from a description that the victim gave to the officer. Yet, the prosecution presented testimony from the officer that he created the lineup based upon the victim's description of her attacker.

Assuming *arguendo* that the Commonwealth presented false testimony regarding how the lineup was composed, that testimony and any testimony that could have been derived by impeaching the officer using his police report, which mentioned Appellant's prior criminal history, could not have been so great as to outweigh the victim's unequivocal identification testimony. Thus, Appellant is not entitled to PCRA relief for this claim.

 Appellant's third issue on appeal is a layered claim of ineffective assistance of counsel. He first asserts that trial counsel was ineffective in failing to request a mistrial, object, or request a continuance to investigate a highly prejudicial and suggestive photographic identification of Appellant, which was used without prior notice to the defense. Appellant properly layers that claim by alleging that appellate counsel was ineffective in not raising this

issue on direct appeal. Lastly, Appellant argues that the PCRA court erred in deciding that he had previously litigated this issue.

Appellant submits that trial counsel elicited testimony from the victim that the Commonwealth showed her two photographs of Appellant prior to her taking the stand. According to Appellant, trial counsel should have requested a mistrial or a continuance because counsel was unaware of the identification. In leveling his argument, Appellant contends that counsel had no reasonable basis for his failure to take action and that he suffered actual prejudice because his defense was based on the difference in his appearance and the initial description the victim provided to police. The Commonwealth counters that the issue was previously litigated in *Burkett v. Fulcomer, supra.*

■ Since Appellant's direct appeal occurred prior to our Supreme Court's decision in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), direct appeal counsel was required to raise all claims of ineffectiveness of trial counsel because trial counsel and appellate counsel were not the same. *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 420 n. 11 (2009). In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue. In the instant case, however, the Third Circuit Court of Appeals denied Appellant relief on this claim in *Burkett v. Fulcomer, supra*, at 1448.

In *Burkett v. Fulcomer*, Appellant maintained that trial counsel was ineffective for not filing a motion to suppress identification testimony based on the victim's viewing of a photographic display that consisted of two photographs shown to her on the date of her testimony. The court rejected that position, stating, "assuming *arguendo* that the photograph identification procedure employed was unnecessarily suggestive, the tainted influence could not have been so great as to outweigh the victim's identification testimony resulting from her observation of the perpetrator at close range for a prolonged period of time during the commission of the crime." *Id.*

■ Appellant avers that the current issue was not previously litigated because his claim is that counsel was ineffective in not requesting a mistrial, objecting, or requesting a continuance to investigate the photographs shown to the victim on the day of trial. Additionally, Appellant argues that because he is alleging that appellate counsel was ineffective, his current claim is separate and distinct from his prior claim. With respect to Appellant's latter argument, when a prior collateral proceeding has determined that a petitioner has not suffered prejudice due to trial counsel's actions, a layered claim of ineffectiveness must necessarily fail since the underlying issue of trial counsel's ineffectiveness has previously been determined against the petitioner.

■ Further, the fact that a petitioner presents a new argument or advances a new theory in support of a previously litigated issue will not circumvent the previous litigation bar. *Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super.2000). According to 42 Pa.C.S. § 9544, an issue is previously litigated if:

. . . .

(2) the highest appellate court in which the petitioner could have had review as a

matter of right has ruled on the merits of the issue; or

(3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

In the present case, the issue of prejudice from the allegedly improper photographic identification, relative to the two photographs shown to the victim prior to her testimony at trial, was decided in a federal proceeding in which Appellant collaterally attacked his conviction.[5] Thus, Appellant has previously litigated this issue and he is not entitled to relief. 42 Pa.C.S. § 9543(a)(3); *Commonwealth v. Reyes,* 582 Pa. 317, 870 A.2d 888 (2005). Moreover, Appellant suffered no prejudice as a result of trial counsel's actions, since, as the Third Circuit aptly described, the victim's identification testimony resulted from "her observation of the perpetrator at close range for a prolonged period of time." *Fulcomer, supra* at 1448.

Appellant's next contention is that he was effectively denied a direct appeal and constructively denied the assistance of appellate counsel. In advancing his position, Appellant argues that direct appeal counsel merely retyped a rough draft of a brief Appellant submitted to counsel, which raised certain issues Appellant believed should be asserted on appeal. The Commonwealth counters that appellate counsel filed three briefs on direct appeal and Appellant admitted that the briefs contained the issues Appellant asked him to raise. Indeed, according to Appellant, Appellant prepared the briefs.

■ In essence, Appellant's claim is that appellate counsel's stewardship of his direct appeal was ineffective and denied him of his right to direct appeal entitling him to a *nunc pro tunc* direct appeal. In *Commonwealth v. Pulanco,* 954 A.2d 639 (Pa.Super.2008), this Court held that a defendant is not entitled to reinstatement of his direct appeal rights when he received a direct appeal that addressed some of his issues. Therefore, we reject Appellant's contention that he is entitled to another direct appeal. However, *Pulanco* instructed that review of any claims that were not raised on direct appeal should be conducted based on the ineffective-assistance-of-counsel test. Further, our Supreme Court has held that the filing of a deficient brief does not warrant a presumption of prejudice. *Commonwealth v. Reed,* 601 Pa. 257, 971 A.2d 1216 (2009). Thus, Appellant must plead and prove the three prong ineffective-assistance-of-counsel test relative to counsel's actions during his direct appeal. A PCRA petitioner raising ineffective-assistance-of-counsel claims is only entitled to relief after he shows by a preponderance of the evidence that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. § 9543(a)(2)(ii). The direct appeal process has been held to be part of the truth-determining process. *See Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999).

Counsel is presumed effective and will only be deemed ineffective if the petitioner demonstrates that counsel's performance was deficient and he was prejudiced by

5. Although the waiver portion of the PCRA statute refers to a prior state post-conviction proceeding, no such language is contained within the previous litigation definition relative to a collateral proceeding. Thus, an issue can be previously litigated in a federal collateral attack.

that deficient performance. *Commonwealth v. Daniels, supra.* Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786, 797 (2008). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Rathfon,* 899 A.2d 365, 370 (Pa.Super.2006).

To properly plead ineffective assistance of counsel, a petitioner must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Tedford,* 598 Pa. 639, 960 A.2d 1 (2008) (citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987) (adopting the U.S. Supreme Court's holding in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))). If a petitioner fails to plead or meet any elements of the above-cited test, his claim must fail. *Commonwealth v. Steele, supra.*

■ Assuming that appellate counsel filed a brief substantially identical to that prepared by Appellant, we do not find such conduct to rise to the level of actual prejudice. Since Appellant raised herein the claims appellate counsel purportedly failed to set forth on direct appeal and they do not warrant relief, appellate counsel cannot be ineffective for not arguing those issues during Appellant's direct appeal. *See Commonwealth v. Hall,* 582 Pa. 526,

872 A.2d 1177 (2005); *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003).

The final claim asserted by Appellant is that PCRA counsel was ineffective by failing to present testimony of appellate counsel at the PCRA hearing. Appellant submits that this is the first opportunity to challenge PCRA counsel's effectiveness and that this Court may review claims of PCRA ineffectiveness although raised for the first time on appeal.

Claims of PCRA counsel's ineffectiveness have been reviewed, although set forth for the first time on appeal, because it was the first opportunity to posit the issue.[6] *Commonwealth v. Lauro,* 819 A.2d 100 (Pa.Super.2003); *Commonwealth v. Malone,* 823 A.2d 931, 935 (Pa.Super.2003); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998); *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999); *Commonwealth v. Kenney,* 557 Pa. 195, 732 A.2d 1161 (1999). More recently, our Supreme Court discussed the propriety of addressing assertions of PCRA counsel ineffectiveness which are alleged for the first time on appeal in both *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875 (2009), and *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125 (2009).

Our Supreme Court stated in *Pitts* that, although the defendant argued in his appeal that it was his first opportunity to challenge PCRA counsel's stewardship because PCRA counsel no longer represented him, he could have challenged PCRA counsel's effectiveness after receiving counsel's withdrawal letter and the notice of the PCRA court's intent to dismiss.

---

**6.** Since the decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), there has been increased discussion on whether it is appropriate to review PCRA counsel's effectiveness when raised for the first time on appeal. *See generally Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125 (2009); and *Commonwealth v. Pitts,* 603 Pa. 1, 981 A.2d 875 (2009).

Since the defendant did not respond to the notice of dismissal, the Court held that the issue of whether PCRA counsel was ineffective was waived. *Pitts, supra* at 880 n. 4. In the case *sub judice*, the rule regarding a notice of dismissal in non-capital cases, Pa.R.Crim.P. 907(1), does not apply because an evidentiary hearing was held. Thus, the rationale of waiver expressed in *Pitts* is inapplicable to the case at bar.

In *Commonwealth v. Ligons, supra,* our Supreme Court rendered a plurality decision on the issue of whether an appellate court can review PCRA counsel's ineffectiveness when raised for the first time on appeal. Chief Justice Castille, joined by Justices Eakin and McCaffery, urged that such allegations not be reviewed without first affording a PCRA court the opportunity to rule on the issues. According to the Chief Justice, *Grant* removed the requirement that ineffective assistance claims be raised at the first opportunity. He added that to allow review of these claims on appeal creates an extra-statutory " 'as-of-right' ability to litigate a new, unlimited, and essentially serial PCRA petition on PCRA appeal." *Id.* at 1166.

Justice Baer, joined by Justices Saylor and Todd, countered by arguing that an appellant's claims of PCRA counsel ineffectiveness, raised for the first time on appeal, should be entertained because it is the only way to afford a PCRA petitioner an opportunity to enforce his right to effective PCRA trial counsel. *Id.* at 1140–1141. Since *Ligons* is a plurality decision, it does not command adherence on this issue. Therefore, we apply the binding precedent in this area.

As we stated in *Lauro, supra,* if, on a claim of PCRA ineffectiveness, we determine that there is a reasonable probability that, but for PCRA counsel's act or omis-

sion, the result of the PCRA proceeding would have been different, we would be required to remand for a new PCRA hearing. *Id.* at 109. This would give the PCRA court the ability to address claims properly raised in the PCRA petition and developed before the PCRA court. *Id.; Malone, supra* at 935.

■ Appellant's argument is that PCRA counsel could have had no reasonable basis not to call his direct appeal attorney to the stand since she specifically requested to continue the original PCRA hearing in order to call that attorney to testify. The PCRA court granted Appellant's request and direct appeal counsel appeared at the subsequent hearing. However, PCRA counsel and Appellant decided at that time not to present his direct appeal attorney as a witness. Appellant also submits that he suffered prejudice because the PCRA court indicated in its decision that it did not have the benefit of direct appeal counsel's testimony to determine his effectiveness. According to Appellant, direct appeal counsel was a necessary witness to establish his claim that he was effectively denied a direct appeal.

The Commonwealth contends that Appellant acquiesced in the decision not to call his direct appeal counsel at the hearing and offered no objection to his PCRA attorney's decision not to present direct appeal counsel as a witness. Additionally, the Commonwealth highlights that it attempted to call the attorney to testify and Appellant objected, at which point the PCRA court sustained the objection and did not allow the attorney to testify. Appellant has presented no argument that he did not agree with his lawyer's decision not to present testimony from his direct appeal counsel, nor has he asserted that his attorney improperly advised him about

calling this particular witness to the stand. Moreover, it is clear from the record that Appellant chose not to call appellate counsel to the stand because the PCRA court had already ruled that all factual allegations contained within his PCRA were admitted because of the Commonwealth's failure to file an answer as directed. In light of this background, we find Appellant's claim to be meritless and turn now to his first issue and its subparts.

▇▇▇ Appellant's due process issue and its three sub-issues concern the applicability of the PCRA to his claims. Both Appellant and the Commonwealth contend that his due process claims, with respect to the lengthy period it took the PCRA court to dispose of his petition, are not cognizable under the PCRA. Hence, we first address Appellant's sub-issue C, whether the PCRA court erred by failing to treat his delay claim as a *habeas corpus* petition because Appellant's due process claim was not cognizable under the PCRA, before proceeding to issue one and sub-issues A and B.

▇▇▇ Initially, we note that the question of whether a substantive due process claim regarding the delay in the handling of a PCRA is cognizable under the PCRA statute appears to be a matter of first impression. However, it is well established that pursuant to Pennsylvania law, the PCRA subsumes the writ of *habeas corpus* unless the claim does not fall within the ambit of the PCRA statute. 42 Pa.C.S. § 9542; 42 Pa.C.S. § 6503(b); *Commonwealth v. Greer*, 866 A.2d 433 (Pa.Super.2005); *Commonwealth v. Peterkin*, 554 Pa. 547, 722

A.2d 638 (1998); *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999).

Our Supreme Court has consistently held that the PCRA statute and its eligibility requirements are to be broadly construed. *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008); *Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003); *Commonwealth v. Chester, supra*. Nevertheless, the Pennsylvania Supreme Court also has recognized that certain unique claims do not give rise to a cognizable claim under the PCRA statute. *See Commonwealth v. Judge*, 591 Pa. 126, 916 A.2d 511 (2007); *Commonwealth v. West*, 595 Pa. 483, 938 A.2d 1034 (2007). In those rare instances that a post-conviction claim does not fit within the statutory scheme of the PCRA, a writ of *habeas corpus* may be appropriate.

In *Judge*, the Court held that an allegation that Canada violated the petitioner's rights under the International Covenant for Civil and Political Rights was not a cognizable claim pursuant to the PCRA. Similarly in *West*, 595 Pa. 483, 938 A.2d 1034, our Supreme Court concluded that a substantive due process challenge to the validity of recommitting the defendant to prison after a nine-year delay in which he had mistakenly been free on appeal bond did not fall within the ambit of the PCRA.

Appellant contends that once the PCRA court determined that "matters occurring during the post-conviction stage of the proceedings (such as a PCRA proceeding) do not come under the purview of the statute," it should have treated that claim as a *habeas corpus* petition.[7] Appellant's brief at 55 quoting Trial Court Opinion, 4/14/09,

---

**7.** This statement by the trial court is incorrect insofar as it broadly sweeps all claims related to actions during a PCRA outside of the purview of the statute. Case law establishes that

PCRA counsel can be held ineffective based on his or her action or inaction during the PCRA process. Hence, some matters that oc-

at 2. The Commonwealth agrees that the issue is not cognizable under the PCRA statute. It asserts that the due process issue of delay has no bearing on the truth-determining process or his adjudication of guilt. We disagree with the Commonwealth that no claims related to the PCRA process involve the truth-determining process and the reliability of an adjudication of guilt.

The PCRA process, although not directly related to an adjudication of guilt, is part of the truth-determining process; otherwise, claims of PCRA counsel ineffectiveness would not be cognizable under the PCRA. Moreover, as our Supreme Court stated in *Hackett, supra,* PCRA eligibility requirements are to be broadly interpreted, "regardless of the 'truth-determining process' language," of the statute. *Hackett, supra* at 986. For the following reasons, we disagree with the Commonwealth and Appellant that Appellant's due process issue, relative to the delay in addressing his PCRA, does not fit within the parameters of the PCRA.

■ PCRA review is limited to defendants who claim that they were wrongfully convicted and/or are serving an illegal sentence. 42 Pa.C.S. § 9542; *Judge, supra; West, supra; see also Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287 (2001) (Castille, J. concurring). The specifically-enumerated substantive issues that are reviewable pursuant to the PCRA relate to matters affecting conviction and sentence. 42 Pa. C.S. § 9543(a)(2).

Appellant's claim herein challenges the PCRA court's and the Commonwealth's actions, as well as the inaction of numerous appointed attorneys, in delaying his PCRA hearing and failing to address his petition in a timely manner. This assertion does not, on its face, challenge either Appellant's sentence or his conviction. Instead, Appellant asserts that the "due process clause of the Fourteenth Amendment does not guarantee a defendant a favorable decision, but it does guarantee a timely decision, favorable or not." Appellant's brief at 30.

However, the underlying argument made by Appellant relates directly to the effectiveness of his attorneys in setting forth his claims that attack his conviction and sentence. Accordingly, Appellant is, in fact, asserting that the truth-determining process, which includes the PCRA process, was undermined by both constitutional violations, *i.e.,* due process violations, and ineffective assistance of counsel during his PCRA matter. Hence, Appellant's contention that the due process clause entitles him to have a properly-presented motion for post-conviction relief decided without undue delay is cognizable under the PCRA.[8]

Having concluded that Appellant's due process[9] issue is cognizable under the PCRA statute, we next examine Appel-

---

cur during a PCRA proceeding certainly fall within the ambit of the PCRA statute.

8. Although Appellant's due process delay claim cannot accrue until after the actual filing of an original petition, *i.e.,* delay in the PCRA proceedings, it could be raised in any amended petition that he filed during that proceeding. Thus, although the issue could never be raised in a timely first *pro se* peti-

tion, it could be included in a subsequent amended petition.

9. Appellant's due process claim could rightly fall under either the rubric of procedural or substantive due process. Our Supreme Court has held that unreasonable procedural delays in a criminal case can implicate a defendant's substantive due process rights. *Commonwealth v. West,* 595 Pa. 483, 938 A.2d 1034

lant's first issue and subissues A and B.[10] Appellant's claims implicate the determination of the court below that the Commonwealth did not violate Appellant's due process rights under the Pennsylvania and federal constitution through the inordinate delay in processing and disposing of his PCRA.

 While neither this Court nor our Supreme Court have had the opportunity to address a delay in a PCRA consistent with the facts herein, we find that the test discussed in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is appropriate. We recognize that *Barker* related specifically to a speedy trial claim, but our courts have subsequently applied it to due process claims of delay. In addition, this Court is cognizant that the post-conviction delay herein does not relate to sentencing but instead pertains to a delay in addressing a post-conviction petition. Nevertheless, we believe that the *Barker* framework is proper in this instance. Thus, in analyzing this issue, we apply the four-part test delineated in *Barker*. *See Commonwealth v. West, supra* (stating Pennsylvania courts have applied the *Barker* factors in the context of post-conviction delay in sentencing).

 Initially, we note that the due process clause of the Fourteenth Amendment guarantees state criminal defendants certain procedural safeguards. Although there is no constitutional mandate that a state provide a method to collaterally attack a conviction, *see Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), once a procedure is

provided, those procedures are required to meet basic and fundamental due process requirements. *Id.* One of those requirements includes the right to a decision within a reasonable time.

Pursuant to *Barker*, the court first considers whether the delay itself is sufficient to trigger further inquiry. Second, the court must evaluate the reason for the delay. Thirdly, the court must ascertain the timeliness of the defendant's assertion of his right; and lastly, the court must decide if there exists any resulting prejudice to the defendant. The PCRA court makes no mention of *Barker* despite the fact that Appellant argued for its application in his PCRA petition. The court did conclude that the result of the delay was attributable to Appellant's repeated requests for new counsel, although the court itself continued to find a need to grant those requests.

 In applying *Barker*, we find that a fifteen-year delay in holding an evidentiary hearing and sixteen-year period in which to decide a PCRA is sufficient to trigger further inquiry. In analyzing the second prong of the *Barker* test, we remain aware that the delay is to be weighed heavily against the government if the delay is deliberate and weighed less against the Commonwealth if the delay is the result of negligence. After a thorough review of the record, we conclude that the record substantiates that the vast majority of the delay is not attributable to Appellant and therefore reject the Commonwealth's position that it was not responsible for any of the delay.

---

(2007). Procedural due process, on the other hand, generally guarantees a meaningful opportunity to be heard. *See Commonwealth v. Makara*, 980 A.2d 138 (Pa.Super.2009).

**10.** Appellant has not set forth an equal protection argument; thus, that portion of Appellant's issue is waived. *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa.Super.2005).

We find particularly unpersuasive the Commonwealth's arguments that Appellant is responsible for the delay because he continually sought an attorney who would file an amended petition. According to the Commonwealth, since no specific time frame is contained within the applicable rules of criminal procedure or the PCRA statute relative to the filing of an amended petition, Appellant's demands were unwarranted. This position is unavailing as even prior to the adoption of the current PCRA, the failure of counsel to file an amended petition or a supporting brief with respect to a post-conviction petition rendered the proceeding uncounseled. *See Commonwealth v. King*, 253 Pa.Super. 224, 384 A.2d 1314 (1978); *Commonwealth v. Ollie*, 304 Pa.Super. 505, 450 A.2d 1026 (1982). It is simply incomprehensible that it could take over ten years for a petitioner to have an amended petition filed on his behalf and sixteen years to decide the PCRA. As a matter of law, an amended PCRA petition is required on a first-time petition. *King, supra; Ollie, supra; Commonwealth v. Hampton*, 718 A.2d 1250 (Pa.Super.1998); *Commonwealth v. Priovolos*, 746 A.2d 621 (Pa.Super.2000); *Commonwealth v. Powell*, 787 A.2d 1017 (Pa.Super.2001).

■ Further, the PCRA court continually granted Appellant's requests for new counsel. Had the PCRA court determined that Appellant was not entitled to new counsel because his complaints about counsel were meritless, it was not required to appoint new counsel. A defendant is not entitled to appointed counsel of his choice. *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 109 (1998). Perhaps more importantly, the third prong of the

*Barker* test mandates that a defendant diligently assert his rights, which is exactly what Appellant did.

The Commonwealth's position that Appellant's third counselor in this PCRA matter made significant efforts on his behalf is also questionable. Although that attorney did attempt to obtain certain documents, spoke with Appellant's trial counsel, filed certain motions for discovery, and attended some hearings, he never filed an amended PCRA petition and was not prepared to proceed as of September 1, 1998, over five years after the original petition had been filed. Further, counsel acted only after a complaint by Appellant. While we are cognizant that Appellant may have desired to raise frivolous or meritless issues, causing a conflict with some of his attorneys, a lawyer nonetheless owes a duty to his client to proceed diligently. *See Hampton, supra; Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super.2003). Indeed, the only conflict of record appears to be Appellant's insistence that the matter be expedited. If the attorney believed that Appellant's issues were meritless, he or she could have filed a *Turner/Finley* No–Merit letter.[11]

In addition, we conclude that Appellant's five-year delay in filing his PCRA petition is irrelevant in determining whether the delay in handling his PCRA deprived Appellant of due process. Once Appellant filed his PCRA, the Commonwealth, the PCRA court, and appointed counsel all were under a duty to proceed in a reasonable manner. At the time Appellant filed his petition, he was under no duty to file the petition within one year of the finality of judgment of sentence. Moreover, as of

---

**11.** *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988) (*en banc*) establish the procedure for withdrawal of court-appointed counsel in collateral attacks on criminal convictions.

1991, Appellant was litigating this case before the federal courts and, until January 21, 1993, the trial court had not properly complied with the federal court order to reduce Appellant's sentence. Appellant filed his PCRA within two weeks of that order.

Moreover, the record establishes the following with respect to the delay in deciding this matter. On February 2, 1993, Appellant filed his first *pro se* PCRA petition. The PCRA court appointed counsel on March 19, 1993. Original PCRA counsel, however, worked with Appellant's appellate counsel; therefore, he conflicted out of the case on April 19, 1993 and a second PCRA attorney was appointed. The court directed that attorney to file an amended petition, but counsel neglected to do so.[12] On September 30, 1994, Appellant filed a *habeas corpus* petition raising the issue of delay as well as counsel's failure to file an amended petition. As a result of that petition, the PCRA court appointed Appellant's third PCRA attorney on November 4, 1994. This attorney never filed an amended petition and on April 13, 1995, Appellant requested new counsel. Apparently, this request spurred counsel into action and on July 17, 1995, he filed a motion for production of police reports and witness statements. The court granted that motion on October 23, 1995.

The Commonwealth filed a motion for reconsideration, which the court denied. In addition, the Commonwealth did not disclose those documents within the directed period. Subsequently, Appellant, on June 8, 1996, sought new counsel, as his attorney still had not filed an amended petition. Counsel again sprang into action and filed a motion to compel the production of the previously requested documents on September 3, 1996. The court granted that motion on October 9, 1996, and gave the Commonwealth forty-five days to supply Appellant with the requested police reports and witness statements. Again, in June 1997, Appellant's attorney filed a motion for discovery, which the PCRA court granted. Despite the lapse of four years, the Commonwealth still had apparently neglected to turn over the correct documents per court order. Further, counsel had not yet filed an amended PCRA petition.

On March 17, 1998, Appellant filed yet another *habeas corpus* petition due to the five-year delay in the PCRA matter. PCRA counsel was permitted to withdraw from a separate appeal in which he was representing Appellant relative to a denial of parole. On or about July 23, 1999, the court appointed another lawyer to represent Appellant. Appellant's newest attorney proved no more diligent than his prior counselors, taking no action of record. Accordingly, Appellant filed a petition seeking another attorney.

The court conducted a hearing on the matter on November 15, 2000, and acquiesced to Appellant's request. Not surprisingly, Appellant's newest attorney failed to file an amended petition. On January 30, 2002, almost nine years after Appellant filed his original petition, he again attempted to secure different counsel. Following a hearing that occurred on April 15, 2002, the PCRA court granted

---

**12.** Pa.R.Crim.P. 905(B) provides that the PCRA court may dismiss a petition if counsel does not comply with an order directing amendment to the petition. However, our case law has rendered this part of the rule moot on timely first-time petitions by ruling that the failure of counsel to file an amended petition constitutes *per se* ineffective assistance of counsel. *See Commonwealth v. Hampton,* 718 A.2d 1250 (Pa.Super.1998).

Appellant's motion for new counsel by order dated May 14, 2002. On August 19, 2003, the PCRA court ordered counsel to file an amended petition within forty-five days. That attorney complied and filed an amended petition on October 3, 2003, over ten years after Appellant initially filed his original detailed *pro se* PCRA petition.

Appellant, however, was not satisfied with the amended petition, asserting that the petition contained boilerplate assertions and did not fully develop his issues. A review of the record largely supports Appellant's complaint. The PCRA court again appointed a new lawyer. This attorney sought to file substantially the same petition that Appellant rejected. Again, Appellant applied for new counsel and the court granted Appellant's application. Appellant's eighth PCRA attorney took no action of record for twenty months and requested to withdraw after Appellant complained of his stewardship.

On or about October 16, 2006, the court permitted counsel to withdraw. In November 2006, the PCRA court appointed Appellant's final PCRA attorney who filed an amended PCRA petition August 9, 2007. Subsequently, the PCRA court, on September 5, 2007, directed the Commonwealth to file an answer. Shockingly, the Commonwealth failed to comply. Thereafter, on April 4, 2008 and August 29, 2008, over fifteen years from the original filing of Appellant's PCRA, the court conducted evidentiary hearings. On March 27, 2009, sixteen years after the original filing of this matter, the court denied Appellant's PCRA petition.

A careful review of the above periods indicates that the delay in this case was caused by appointed counsels' failure to take action, the Commonwealth's inability to turn over discovery, and its failure to file an answer, as well as court delay. In addition, we note that, Pa.R.Crim.P. 909, which applies to death penalty cases, mandates that the PCRA court decide a petition after an evidentiary hearing within ninety days. Pa.R.Crim.P. 909(B)(3). The court may grant one thirty-day extension. Pa.R.Crim.P. 909(B)(4). Therefore, although there is no procedural rule requiring a court to determine a petition within a certain time frame after conducting a hearing in a non-death penalty case, presumptively it should not require more than 120 days to render a decision. The PCRA court decision in this matter occurred seven months after the evidentiary hearing concluded. Hence, we agree with Appellant that for the court to attribute delay on the part of his counsel to him is unwarranted based on the present record. *See Wojtczak v. Fulcomer*, 800 F.2d 353 (3d Cir. 1986); *Story v. Kindt*, 26 F.3d 402 (3d Cir.1994) (both finding appointed counsel's inaction not attributable to the defendant).[13] Thus, the delay tilts in favor of Appellant, regardless of whether the Commonwealth or his appointed counsel's actions were negligent or purposeful.

■ The record also conclusively establishes that Appellant was diligent in attempting to ascertain PCRA relief. He continually notified the court that his attorneys had yet to file an amended petition and sought to have someone advance his legal claims. The record is replete with Appellant's desires to have his case heard. *See* Post–Conviction Hearing, 10/6/06, at 4–7; Petition for *Habeas Corpus*, 1/30/02;

---

**13.** Although federal circuit court decisions are non-binding, we find the rationale discussed therein sound.

Petition for *Habeas Corpus*, 3/17/98; Petition for *Habeas Corpus*, 2/21/97; Petition for *Habeas Corpus*, 9/30/94. Therefore, the third area of inquiry relative to a *Barker* analysis weighs in favor of Appellant.

 The final element of the *Barker* test pertains to prejudice. Prejudice in the context of the present case requires a showing of actual prejudice. *See West, supra* at 1049. Appellant argues that this Court must determine whether the passage of fifteen years prejudiced his ability to prove his claims for relief. In addition, he opines that he has suffered prejudice because of increased anxiety and frustration as the result of the excessive delay in this matter.

In support of his position that he suffered prejudice, he notes that his trial counsel died in the year 2005, preventing him from being able to call trial counsel as a witness at his evidentiary hearing. According to Appellant, trial counsel's testimony relative to the Commonwealth's failure to turn over police reports was necessary to demonstrate how this evidence would have aided or altered his trial strategy. Further, he asserts that his mother, who was an alibi witness, has passed away, thereby prejudicing him. Finally, Appellant avers that the delay itself is "so egregious as to violate fundamental fairness and all conceptions of justice, decency and fair play." Appellant's brief at 54.

No Pennsylvania court has declared that delay in addressing a PCRA petition is *prima facie* sufficient to establish actual prejudice. We decline to do so herein. Although the excessive delay in this case should not be countenanced, it does not establish that Appellant is automatically entitled to a new trial or discharge. Appellant still must be able to prove that the delay would have likely led to the outcome of his PCRA proceeding having been different. This he cannot do. While true that Appellant may have suffered some amount of prejudice as the result of his inability to call his trial counsel to testify at his PCRA hearing, because we have found that the issues that counsel would have addressed do not warrant relief, the inability to present Appellant's trial attorney did not result in actual prejudice. Additionally, although Appellant's mother was an alibi witness, so too were his sister and his sister's then-boyfriend; thus, they could have been presented at his PCRA hearing. Since Appellant did not suffer actual prejudice as the result of the delay, we hold that he is not entitled to discharge or a new trial.

We write further only to note our extreme displeasure with the manner in which this case has proceeded. A sixteen-year period in which to determine a PCRA or a *habeas corpus* petition is untenable. Perhaps Appellant's dissatisfaction with certain attorneys contributed to some of the delay; nonetheless, the Commonwealth's utter failure to timely obey court orders, to turn over discovery or to file an answer to Appellant's petition, and the trial court's failure to direct some of Appellant's attorneys to file an amended petition have contributed in large part to the almost unheard-of delay in this case. The lack of diligence on the part of the Commonwealth, the numerous appointed attorneys, and even the court is all the more egregious in light of previous decisions rendered by the federal courts highlighting the lengthy delays in Appellant's sen-

tencing.[14] However, as discussed *supra,* despite the delays, we find that Appellant is not entitled to the relief he requests under Pennsylvania law. Nevertheless, we are compelled to caution against such remarkable delay in the future.

Order affirmed. Jurisdiction relinquished.

14. The delay in this case likely precludes review by our Supreme Court because Appellant will no longer be eligible for relief, since his sentence may soon expire, even if he decides to attempt to petition for allowance of appeal.