J-S59027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES KELLY | |
| Appellant | No. 3544 EDA 2013 |

Appeal from the PCRA Order October 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-1011621-1995

BEFORE:  SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 10, 2014**

James Kelly appeals from the order of the Court of Common Pleas of Philadelphia County, denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

In 1996, Kelly was convicted by a jury of first-degree murder and conspiracy and was sentenced to a mandatory term of life imprisonment. Kelly did not file post-sentence motions or an appeal; however, his post-sentence motion and appellate rights were subsequently reinstated *nunc pro tunc* following PCRA proceedings.  Kelly's post-sentence motions were denied by operation of law and he subsequently filed an appeal, in which he raised,

_____

[*] Retired Senior Judge assigned to the Superior Court.

*inter alia*, claims of ineffectiveness of trial counsel. On July 9, 1999, this Court remanded Kelly's case to the trial court for an evidentiary hearing on the ineffectiveness claims, which the trial court ultimately rejected. This Court affirmed that ruling and the Supreme Court denied allowance of appeal on February 9, 2001.

Kelly, represented by counsel, filed his first PCRA petition on September 26, 2001. The PCRA court dismissed that petition by order dated February 19, 2003. That order was affirmed by this Court and the Supreme Court denied allowance of appeal. On March 3, 2008, Kelly filed a *pro se* petition for writ of habeas corpus with the United States District Court for the Eastern District of Pennsylvania. That petition was denied on October 5, 2009.

On November 15, 2012, Kelly filed his second PCRA petition, represented by new counsel. The PCRA court dismissed the petition as untimely, without a hearing, by order dated October 18, 2013. This timely appeal follows, in which Kelly raises the following issues, *verbatim*, for our review:[1]

> 1. In a case seeking post-conviction relief based on after-discovered evidence in a shooting case, in which the evidence proffered by [Kelly], and which exonerates [Kelly], shows that

---

[1] In his brief, Kelly presented one additional claim. However the claim is substantively identical to his first claim and, accordingly, will not be addressed separately.

the police interfered with [Kelly's] ability . . . to discover the exonerating evidence until a time less than 60 days before he filed his [p]etition, should the [PCRA] court have held a hearing?

2.      Where the evidence in such a case demonstrates that the police arrested the wrong person as the shooter, and that they prevented the defense from discovering that fact until recently, should a new trial be awarded?

3.      In a case wherein the prosecutor misled the court and counsel by stating that a key witness was dead when the witness was still alive, should a new trial be awarded?

4.      In a case where counsel['s] ineffectiveness so permeates the record that it is unlikely that the jury reached a just decision, should a new trial be granted?

5.      In a case where the evidence of actual innocence is compelling, should a new trial be awarded?

Brief of Appellant, at 4.

We begin by noting that Kelly's brief does not comply with the Rules of Appellate Procedure.  In particular, Kelly entirely ignores the mandates of Rule 2119, requiring that:

[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part – in distinctive type or in type distinctively displayed – the particular point treated therein, followed by such discussion and citation to authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).   Here, Kelly's argument section headings in no way correspond to the issues raised in his statement of questions involved. Indeed, the organizational flow of Kelly's argument section bears no relation to the specific issues set forth in his Rule 2116 statement.   Facts are presented and arguments made without a clear connection to any particular

issue. As a result, we have been forced to piece together Kelly's arguments and to discern which arguments are intended to support each claim. It is particularly ironic, in a case in which it is strenuously alleged that "ineffectiveness of counsel . . . permeates the record," that current counsel would submit a non-compliant brief. It is within this court's power to quash or dismiss an appeal for clear violations of the Rules of Appellate Procedure. *Universal Underwriters Insurance Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 689 n.6 (Pa. Super. 2007). However, because Kelly's brief is not so defective as to preclude effective appellate review, we decline to do so here. *Id.*

This Court's standard of review regarding an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010) (citations omitted). In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. *Id.* We may affirm a PCRA court's decision on any grounds if it is supported by the record. *Id.*

We begin by addressing our jurisdiction to consider Kelly's PCRA petition, which, on its face, was untimely. A PCRA petition, including a second or subsequent petition, must be filed within one year of the date the underlying judgment of sentence becomes final. *See* 42 Pa.C.S.A. §

9545(b)(1); *see also Commonwealth v. Bretz*, 830 A.2d 1273, 1275 (Pa. Super. 2003). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3); *see also Commonwealth v. Pollard*, 911 A.2d 1005, 1007 (Pa. Super. 2006). Here, Kelly's judgment of sentence became final on May 10, 2001, upon the expiration of the ninety-day period for filing a writ of *certiorari* with the United States Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13. Thus, Kelly had one year from that date, or until May 10, 2002, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b). Kelly did not file the instant petition until November 15, 2012, approximately 11½ years after his judgment of sentence became final. Accordingly, the PCRA court had no jurisdiction to entertain Kelly's petition unless he pleaded and proved one of the three statutory exceptions to the time bar.[2] *See* 42 Pa.C.S.A. §

---

[2] The statutory exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

*(Footnote Continued Next Page)*

9545(b)(1).  A petition invoking one of the exceptions must be filed within sixty days of the date the claim could have been presented.  42 Pa.C.S.A. § 9545(b)(2).

Kelly's first issue on appeal concerns the governmental interference and after-discovered evidence exceptions to the time bar set forth in subsections 9545(b)(2)(i) and (ii).  Specifically, he claims to have uncovered exculpatory eyewitness evidence allegedly suppressed by the police at the time of trial.  Kelly asserts that he filed his PCRA petition within 60 days of discovering this evidence and that the trial court should, at the very least, have convened a hearing to determine whether relief was warranted.  We find this claim to be without merit.

On September 13, 2013, a private investigator working on Kelly's behalf met with an individual named Tameka Ledbetter, who was the girlfriend of Travis Hughston, the victim killed in the shooting.  Ledbetter told the investigator that, just after the shooting, she saw a man she knew, Sharif Curry, walking away from Hughston's body and stuffing a pistol in his waistband.  Ledbetter claimed she had given police a statement identifying

*(Footnote Continued)* ─────────────────

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1).

Curry as the shooter, but that they had insisted another individual (who was never charged in the case) had done the shooting. Kelly submitted a written question and answer form that Ledbetter completed, acknowledging, *inter alia*, her identification of Curry as the actual shooter.[3]

In order to satisfy the government interference exception under section 9545(b)(1)(i), a petitioner must plead and prove that his failure to raise the claim previously was "the result of interference by government officials with the presentation of the claim[.]" ***Id.*** Where, as here, the petitioner claims that the prosecution withheld evidence he claims would have been beneficial to his defense, he must demonstrate that the prosecution failed to disclose material evidence that deprived him of a fair trial. ***Commonwealth v. Johnson***, 815 A.2d 563, 573 (Pa. 2002). Evidence is "material" only where there is a reasonable probability that its disclosure during trial would have resulted in a different verdict. ***Commonwealth v. Roney***, 79 A.3d 595, 607 (Pa. 2013). A petitioner must demonstrate that the information forming the basis of his claim could not have been obtained earlier with the exercise of due diligence. ***Commonwealth v. Stokes***, 959 A.2d 306, 311 (Pa. 2008).

In order to establish the exception under section 9545(b)(1)(ii), a petitioner must plead and prove that "the facts upon which the claim is

_____

[3] We note that Sharif Curry died in approximately 1995.

- 7 -

predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Id.* In order to prevail on such a claim, a petitioner must show that the evidence: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeachment purposes; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Johnson*, 841 A.2d 136, 140-41 (Pa. Super. 2003). Due diligence demands that a petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001). "A defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence." *Commonwealth v. Padillas*, 997 A.2d 356, 364 (Pa. Super. 2010), citing *Commonwealth v. Chambers*, 599 A.2d 630, 642 (Pa. 1991).

A PCRA petition raising these claims must be filed within 60 days of the date the claims could have been presented. 42 Pa.C.S.A. § 9545(b)(2). A PCRA court may decline to hold a hearing on the petition if the petitioner's claim is patently frivolous and is without a trace of support either in the record or from other evidence. *Commonwealth v. Holmes*, 905 A.2d 507, 509 (Pa. Super. 2006) (holding no abuse of discretion where PCRA dismissed

petition without hearing where after-discovered evidence would not compel different verdict).

Here, both Kelly's claims must fail for the simple reason that Tameka Ledbetter's statement, even if testified to at trial, would not have exculpated Kelly and would not likely have changed the outcome of his trial. The Commonwealth's theory of the case was that Kelly handed his co-defendant, Larry Mullins, a gun, which Mullins subsequently used to shoot the victim. Ledbetter's statement, that she saw Sharif Curry walking away from the victim's body holding a gun, may have been exculpatory as to Mullins, but would not have benefitted Kelly, who was never accused of being the shooter.

Moreover, at trial, the Commonwealth presented the testimony of two eyewitnesses who identified Kelly and Mullins. The first, Ernestine Williams, witnessed Kelly hand an object to Mullins, who placed the object inside his jacket and held onto it inside the jacket as he approached the victim; he then removed his hand from his jacket, holding a gun, and shot the victim multiple times. Williams testified that there was "no doubt in [her] mind" that Kelly and Mullins were the individuals involved in the shooting. N.T. Trial, 8/14/96, at 132. Williams further testified as follows:

> [Williams]: I remember seeing [Kelly and Mullins] at the corner of my block making a transaction, and I remember seeing [Mullins] shoot [the victim], I seen him shoot him in his head behind his ear and he fell in his arms and he laid him on the ground and he stood back and he shot him again. **I remember that very well. And I'll never forget it**.

[Defense Counsel]:   You saw these two men doing a transaction?

A:   Yes.

Q:   What kind of transaction?

A:   [Kelly] handed [Mullins] something.  And [Mullins] never took his hand out until he got to [the victim].

*Id.* at 176 (emphasis added).

A second witness, Colie Baxter, testified that he was driving his car at the intersection of 25th and Diamond Streets when he heard "five to six shots."  N.T. Trial, 8/15/96, at 8.  He pulled his car over and then witnessed two men, who he later identified as Kelly and Mullins, run out of an alleyway, get into a car, and drive away.  One of the men was "holding something down by [his] side."  *Id.*

Accordingly, the Commonwealth presented sufficient evidence to establish Kelly's guilt, such that Ledbetter's identification of Sharif Curry as the shooter would not likely have changed the outcome of the trial.  *See Roney*, *supra*; *Johnson*, *supra*.

Kelly next alleges that the prosecution misled the court by stating that Devon Gilliard, a "key witness," was dead when, in reality, he was, and is still, alive.  Kelly claims he is entitled to a new trial.  This claim is meritless.

In a statement to police, Ernestine Williams stated that she witnessed Kelly and Mullins talking to Devon Gilliard, a teenage drug dealer, just prior to the shooting.  A witness named Andre Bracy also told police that he had

seen Gilliard in a "speakeasy" near the scene of the shooting after it had occurred. However, Gilliard gave a statement to the police indicating that he knew nothing about the shooting and was at home with his mother at the time it occurred. During trial, Gilliard's name came up during a conference outside of the jury's hearing, at which time the prosecutor indicated that Gilliard was dead and, therefore, the defense should not be allowed to mention his name in closing argument so as not to give the jury the impression that the Commonwealth had not called him to testify for some other reason. However, contrary to the statement by the prosecutor, Gilliard was not dead and is alive today.

We begin by noting that Kelly devotes a single paragraph in his argument section to his claim regarding Devon Gilliard. However, he provides no citation to case law or other legal argument in support of his claim. Rule of Appellate Procedure 2119(a) provides that "[t]he argument shall . . . have . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Failure by an appellant to discuss pertinent facts or cite legal authority will result in waiver. *Commonwealth v. Rhodes*, 54 A.3d 908, 915 (Pa. Super. 2012). Consequently, Kelly's underdeveloped argument is waived.

Moreover, even if the claim were not waived, it would be without merit. Kelly does not explain why he failed to raise this issue until his most

recent PCRA petition, which was filed 12 years after Gilliard executed an affidavit that was made part of the court record. *See* Brief of Appellant, at 12. Thus, Kelly has known, or could have known, since the year 2000 that Gilliard is not, in fact, dead.

In addition, despite having knowledge of Gilliard's current place of employment, *see* PCRA Petition, 11/15/12, at ¶ IV.2, Kelly failed to provide an affidavit from Gilliard indicating the facts to which he would testify if called at trial. Instead, Kelly presents only speculation as to what Gilliard might say and states, without basis, that he is a "valuable witness to what actually happened." Brief of Appellant, at 26.

Finally, Kelly presented no evidence whatsoever in support of his claim that the prosecutor's statement regarding Gilliard's death was anything more than an error on counsel's part. Indeed, his one-paragraph "argument" fails entirely to address the "governmental interference" aspect of the claim, focusing instead on the ineffectiveness of trial counsel for failing to locate and interview Gilliard. For these reasons, this claim is meritless.

Kelly's final two appellate issues raise rather nebulous claims regarding the general ineffectiveness of counsel and his actual innocence. A claim of ineffective assistance of counsel will not save an otherwise untimely PCRA petition for review on the merits. *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 786 (Pa. 2000). Moreover, Kelly's ineffectiveness claims are either waived because he failed to present them at the first opportunity, or

have been previously litigated. *See* 42 Pa.C.S.A. § 9544. For example, Kelly devotes nearly three pages of his brief to a discussion of his trial counsel's alleged failure to present an alibi witness and other eyewitnesses. *See* Brief of Appellant, at 24-26. However, this exact issue was raised on direct appeal[4] and found to be meritless. *See Commonwealth v. Kelly*, 152 EDA 2000 (Pa. Super. filed August 24, 2000). Similarly, Kelly's assertion that trial counsel was ineffective for failing to object to an allegedly improper comment on his post-arrest silence is waived, as it could have been raised on direct appeal.

Likewise, Kelly's broad claim of "actual innocence" affords him no relief. The PCRA specifically states it is intended to "provide[] for an action by which persons convicted of crimes they did not commit . . . may obtain collateral relief." 42 Pa.C.S.A. § 9542. However, relief may only be obtained within the parameters of the statute. Thus, a claim of "actual innocence" does not, by itself, provide an exception to the time bar. *See* 42 Pa.C.S.A. § 9545(b). Although Kelly does not devote a separate portion of the argument section of his brief to a discussion of this claim, it is apparent that the claim is grounded in the statement of Tameka Ledbetter. We have

---

[4] Kelly filed his direct appeal in 2000. Prior to our Supreme Court's 2002 decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), claims of trial counsel ineffectiveness were required to be raised at the earliest opportunity the defendant was no longer represented by trial counsel. Thus, in this case, Kelly raised issues of trial counsel's ineffectiveness on direct appeal.

already concluded that Ledbetter's statement, even if true, would neither have exculpated Kelly nor changed the outcome of his trial.

As Kelly's claims do not establish any exception to the time bar, his PCRA petition was properly dismissed without a hearing.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/10/2014