J-S37029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL ROSA | |
| Appellant | No. 2080 MDA 2013 |

Appeal from the PCRA Order entered October 30, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division at No: CP-38-CR-0001564-2011

BEFORE:  LAZARUS, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                **FILED AUGUST 20, 2014**

Appellant, Angel Rosa, appeals from the October 30, 2013 order of the Court of Common Pleas of Lebanon County dismissing his petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. Appellant argues the trial court erred in not finding plea counsel provided ineffective assistance.  We disagree.  Accordingly, we affirm.

The trial court set forth the facts and the procedural history underlying this appeal in its opinion, which we incorporate herein by reference.  ***See*** Trial Court Opinion, 10/30/13, at 1-8.

Appellant raises the following issues for our review:

1. [Appellant] was denied his constitutionally guaranteed right to effective representation when Plea Counsel unlawfully induced [Appellant] to plead guilty by advising him he would get a lesser sentence if he accepted the open plea proffered by the Commonwealth.

> 2. Whether [Appellant] was denied his constitutionally guaranteed right to effective representation when Plea Counsel failed to investigate mitigating factors, such as the "under the influence" claim and [Appellant]'s history of mental illness?

Appellant's Brief at 4.

In an appeal from a denial of post-conviction relief, our standard and scope of review is as follows:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

The PCRA subsection governing relief from a guilty plea requires that the defendant prove that he was unlawfully induced to plead guilty and that he is innocent:

> To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following: (2) That the conviction or sentence resulted from one or more of the following: (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

- 2 -

42 Pa.C.S.A. § 9543(a)(2)(iii).

Both of Appellant's claims challenge the effectiveness of his plea counsel.

> Counsel is presumed effective and will only be deemed ineffective if the petitioner demonstrates that counsel's performance was deficient and he was prejudiced by that deficient performance. Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> To properly plead ineffective assistance of counsel, a petitioner must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. If a petitioner fails to plead or meet any elements of the above-cited test, his claim must fail.

*Id.* (quoting *Commonwealth v. Burkett*, 5 A.3d 1260, 1271-72 (Pa. Super. 2010)); *see also Commonwealth v. Lynch*, 820 A.2d 728, 733 (Pa. Super. 2003) ("[T]he voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.") (citation omitted).

In his first issue, Appellant argues plea counsel was ineffective because he led Appellant to believe he would get a lesser sentence if he accepted the open plea, as opposed to proceeding with a trial, "which [was] the method of adjudication [Appellant] wanted to pursue." Appellant's Brief at 9.

In its opinion, the trial court thoroughly addressed Appellant's claim that plea counsel coerced him into accepting an open plea, discussed the applicable law, and determined that Appellant's claim was without merit. *See* Trial Court Opinion, 10/30/13, at 5-6, 10-11. As the trial court noted, Appellant did not allege he is innocent. *Id.* at 10. Second, the court noted that "the testimony presented at the PCRA hearing as well as the record in this case, clearly indicates that [Appellant] was well aware of his options and that he alone made the decision to enter an open plea[,]" and "that decision was not based on inaccurate or faulty legal advice." Trial Court Opinion, 10/30/13, at 10, 11. The trial court finally noted that Appellant did not suffer "prejudice as the [trial court] did actually impose a sentence which was lower than that offered by the Commonwealth." *Id.* The trial court's analysis and conclusions are correct, and we therefore affirm on this basis in rejecting Appellant's first claim.[1]

Next, Appellant argues plea counsel was ineffective because counsel failed to properly investigate the case. Had he done so, counsel would have discovered that he was under the influence at the time of the underlying

_____

[1] To the extent Appellant now argues he wanted to proceed to trial, as opposed to taking a plea, Appellant provides no evidence in the record supporting this claim. Assuming it is not waived, the claim is nonetheless without merit because it is devoid of any support in the record.

crimes and that he had a long history of mental illness. Appellant's Brief at 10.

The trial court noted that voluntary intoxication was not a defense applicable in this matter. Trial Court Opinion, 10/30/13, at 12 (citing 18 Pa.C.S.A. § 308, relating to intoxication or drugged condition). The trial court also noted Appellant himself, after hearing from his plea counsel what was involved, decided he did not want to pursue the insanity defense. *Id.* at 12-13. The court also noted that the insanity defense would not have been available to Appellant because "both his statements to his attorney and his actions point to his knowledge of his conduct." *Id.* at 13.[2] Accordingly, the trial court concluded plea counsel was not ineffective for failing to assert these defense on Appellant's behalf. *Id.* The trial court's analysis and conclusions are correct, and we therefore affirm on this basis in rejecting Appellant's second claim. Because we affirm based upon the trial court's opinion, we direct that a copy of the trial court's October 30, 2013, opinion be attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary Date: 8/20/2014

---

[2] *See also* 18 Pa.C.S.A. § 315 (relating to insanity).

- 5 -

ENTERED & FILED

2013 OCT 30 P 4: 02

# IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVNIA      :      NO. CP-38-CR-1564-2011

     v.      :

ANGEL J. ROSA      :

**APPEARANCES:**

**NICHOLE EISENHART, ESQUIRE**      **FOR THE COMMONWEALTH**
**ASSISTANT DISTRICT ATTORNEY**

**ERIN ZIMMERER, ESQUIRE**      **FOR ANGEL J. ROSA**
**MONTGOMERY & ZIMMERER**

**OPINION, TYLWALK, P.J., OCTOBER 30, 2013.**

Defendant was charged with Criminal Attempt to Commit Criminal Homicide, two counts of Aggravated Assault, Person Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms and Receiving Stolen Property[1] after he shot his former girlfriend numerous times and then attempted to commit suicide with a stolen gun. He entered an open plea of guilty on February 22,

---

[1] 18 Pa.C.S.A. §§901, 2501(a), 18 Pa.C.S.A. §2702(a)(1), 18 Pa.C.S.A. §2702(a)(4), 18 Pa.C.S.A. §6105(a)(1), 18 Pa.C.S.A. §3925(a), respectively.

1

2012. On April 25, 2012, he was sentenced to a period of incarceration of 27 to 55 years. Throughout those proceedings, Defendant was represented by court-appointed counsel.

On May 14, 2012, Defendant filed a Petition pursuant to the Post Conviction Relief Act, 42, Pa.C.S.A. §9541 *et seq.* ("PCRA"). On June 24, 2013, an Amended PCRA Petition was filed in which he alleged ineffectiveness on the part of defense counsel on three bases. First, he avers that defense counsel unlawfully induced him to plead guilty by advising him that he would get a lesser sentence if he accepted an open plea. Second, he complains that his attorney was ineffective for failing to fully investigate various aspects of the case because he was under the influence of drugs at the time of the offense. Third, he alleges that defense counsel was ineffective for failing to investigate mitigating factors relevant to Sentencing, including his treatment for mental health issues. We conducted a hearing on the Petition on July 1, 2013. The evidence adduced at the hearing revealed the following as relevant to our disposition of this matter.

Defendant testified that prior to meeting with his attorney, he had written his attorney and admitted that he was guilty of the charges. (N.T. 7/1/13 at 10; Exhibit "1") Defendant recalled having met with his attorney two to three times after he sent the letter. (N.T. 7/1/13 at 10) On one occasion, counsel visited him

2

at the prison in order to discuss the details of the incident. (N.T. 7/1/13 at 9) Defendant testified that the next time the two met was at Arraignment when his attorney informed him that there was a plea offer of "20 some to 60 years." (N.T. 7/1/13 at 9) The next meeting was at the prison when he and his attorney discussed Discovery and the plea agreement. (N.T. 7/1/13 at 10) Defendant testified that his attorney advised him that the plea offer was the "first and final offer" of the District Attorney. (N.T. 7/1/13 at 9)

Defendant testified that at the time of this offense, he had been using opiates in the form of morphine pills, powder cocaine, crack cocaine, benzodiazepines and Xanax. (N.T. 7/1/13 at 10) He indicated that he was also suffering from anxiety and depression and had undergone psychiatric treatment at Philhaven.[2] (N.T. 7/1/13 at 15) Defendant alleged that he had advised his attorney of his drug use and emotional issues and that he expected his attorney to follow up on these matters. (N.T. 7/1/13 at 15) However, he did not have any of his medical records in his possession at that time. (N.T. 7/1/13 at 16) He felt that this information would be useful in asserting an insanity defense because "[a] sane person doesn't shoot themself (sic) in the head" (N.T. 7/1/13 at 15) and in

---

[2] We are unaware of the nature or extent of this treatment.

3

presenting mitigating circumstances to the Court at Sentencing. (N.T. 7/1/13 at 16)

Defendant acknowledged that he understood that by entering an open plea, he was "throwing myself at the mercy of the Court and it was showing remorse by taking the plea by admitting my guilt." (N.T. 7/1/13 at 17) He also admitted that the plea offer was actually 27 ½ to 60 years and that the sentence which was imposed, 27 to 55 years, was actually less than that. (N.T. 7/1/13 at 17 - 18) However, he felt that it was an unjust sentence for the charge of Attempted Murder because his time of incarceration was greater than was sometimes imposed on a charge of third-degree murder. (N.T. 7/1/13 at 18)

At the hearing, defense counsel testified that he had met with Defendant at least four times prior to his entering his plea, twice in November 2011, once in January 2012 and on February 14, 2012. (N.T. 7/1/13 at 21) He had filed a pretrial motion seeking the suppression of evidence and a hearing was scheduled on that motion for February 22, 2012. (N.T. 7/1/13 at 21)

Prior to their first meeting, counsel had read Defendant's letter indicating that Defendant had committed the crime and advising that he just wanted to try to get the best plea possible. (N.T. 7/1/13 at 21; Exhibit "1")) Defendant did inform counsel of his depression and anxiety, but counsel could not recall having

4

been informed that Defendant had been treated in Philhaven or that Defendant expected him to obtain any medical records. (N.T. 7/1/13 at 23)

After discussing the particulars of the incident, the two did have conversations regarding the possibility of asserting an insanity defense. (N.T. 7/1/13 at 22) During these discussions, Defendant was able to explain to counsel exactly what had transpired during the incident, his motives for his behavior, the background and relationship between Defendant and his victim, and also related that he had intended to kill his victim when he went to her home that evening. (N.T. 7/1/13 R 23, 27) Counsel testified that although he doubted the viability of pursuing a successful insanity defense, if Defendant had wished to pursue that trial strategy, he would have taken all steps necessary to do so. (N.T. 7/1/13 at 25 – 26) However, after counsel explained the particulars of asserting such a defense, Defendant opted not to do so: "[a]bout halfway through the conversation as I was going over everything you need to do he kind of interrupted me and said, look, I did this. I don't want to mess around. I just want to try to get the best plea I can out of this." (N.T. 7/1/13 at 23)

Counsel had also discussed Defendant's drug use at the time of the incident with Defendant. (N.T. 7/1/13 at 27) He explained to Defendant that voluntary

5

intoxication was not a defense to Attempted Homicide and Defendant had indicated to him that he understood. (N.T. 7/1/13 at 27)

Counsel testified that after he discussed the 27 ½ to 60-year offer with Defendant, he had gone back to the District Attorney to see whether anything further would be offered. (N.T. 7/1/13 at 24) Although a term of 25 to 50 years was discussed, no firm offer was ever made. (N.T. 7/1/13 at 24) When counsel discussed the underlying facts with Defendant, he explained that it would be a difficult case, but that Defendant had the option of going to trial and that they could proceed with the motion to suppress evidence at the pretrial hearing. (N.T. 7/1/13 at 30) Defendant advised counsel that he would not take either plea but that he did not wish to go to trial. (N.T. 7/1/13 at 24) At that point, counsel advised him that he had the options of proceeding with trial or entering an open plea, telling him "if you enter an open plea you can't do much worse as they offered you as I calculated everything out the most minimum of 27 years and 9 months to 60 years for everything run – running consecutively to the standard range." (N.T. 7/1/13 at 24) Defendant ultimately decided to enter an open plea with the agreement that Counts II and III (Aggravated Assault) would run concurrent. (N.T. 7/1/13 at 28, 30)

6

The record reflects that prior to entering his plea, Defendant filled out a Guilty Plea form which set forth the maximum sentence which could be imposed for each of his charges. (Guilty Plea form, February 22, 2012) In this form, Defendant indicated that he understood that he had the option of pleading "not guilty" and that he was entering his plea voluntarily. (Guilty Plea form at 1, Paras. 15 – 17)

As counsel was unaware of Defendant having been treated at Philhaven, he did not obtain any records or bring that fact to the Court's attention as a possible mitigating circumstance at Sentencing on April 25, 2012. (N.T. 7/1/13 at 24) He testified that if he had been aware of that treatment, he would have had Defendant sign a release in order to obtain the records as was his usual practice. (N.T. 7/1/13 at 28 - 29) Defendant did not indicate his desire to add any other evidence such as his medical records. (N.T. 7/1/13 at 14) At the PCRA hearing, Defendant testified that he did not make any suggestion regarding the records of his psychiatric treatment as he did not think those would be relevant. (N.T. 7/1/13 at 14)

Counsel explained that he did take steps to mitigate the sentence at Sentencing by emphasizing Defendant's remorse and by informing the Court of Defendant's wish to apologize to the victim. (N.T. 7/1/13 at 32) Although

7

counsel asked Defendant if he wished to make a statement at Sentencing, Defendant declined to do so. (N.T. 7/1/13 at 14) However, Defendant did apologize to the victim before the Court. (N.T. 7/1/13 at 32) After his Sentence was rendered, Defendant executed a Written Post-Sentence Colloquy.

The PCRA provides an action by which "persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. §9542 To be eligible for PCRA relief, the petitioner must plead and prove by a preponderance of the evidence that (1) he was convicted of a crime for which he is currently serving a sentence; (2) the conviction or sentence resulted from one of the statutorily enumerated violations; (3) the alleged error has not be previously litigated or waived; and (4) the failure to litigate the issue previously was not the result of a rational, strategic or tactical decision by counsel. 42 Pa.C.S.A. §9543(a).

When ineffective assistance of counsel is alleged, trial counsel is presumed to be effective and the petitioner bears the burden of proving otherwise. *Commonwealth v. Williams,* 570 A.2d 75 (Pa. 1990). To establish ineffectiveness, a petitioner must plead and prove that the underlying claim has arguable merit, that counsel's actions lacked any reasonable basis, and that counsel's actions prejudiced the petitioner. *Commonwealth v. Miner,* 44 A.3d 684 (Pa. Super.

8

We first note that Defendant admits that he committed these offenses. Furthermore, he advances no claim that his sentence is illegal. Defendant asserts that he was given faulty advice by his attorney with regard to his guilty plea and claims that he only entered the plea because he felt that he had no other choice. At the PCRA hearing, he summed up his complaint: "he made me feel I didn't have no other choice but to take the open plea because the District Attorney wasn't going to plea bargain with me due to the nature of my crime." (N.T. 7/1/13 at 17)

We find this to be a meritless argument as the testimony presented at the PCRA hearing, as well as the record in this case, clearly indicates that Defendant was well aware of his options and that he alone made the decision to enter an open plea. At the PCRA hearing, counsel testified regarding his discussions with Defendant:

> Q: Now, you heard Mr. Rosa's testimony he felt he like he had no other choice but to plead guilty in this open plea offer, was that accurate based on your discussion with him?
>
> A: It was not his only choice. I think when I discussed with him the case, and you know, the facts against him, I said it would be a difficult case at trial, but it wasn't his only option. At the time he entered the plea there was a pretrial hearing scheduled to suppress evidence, if he wanted to go through with a trial I certainly would have gone ahead with the pretrial hearing to suppress evidence and ultimately go to trial.

10

Q: So the decision to plead guilty was completely his, correct?

A: Yes.

(N.T. 7/1/13 at 30)   In addition, Defendant's testimony indicates that he was fully aware of all his options but that he did not want to go to trial and he did not like the plea agreement offered by the Commonwealth. It is clear that he made the decision to enter an open plea on his own and that this decision was not based on any inaccurate or faulty legal advice:

> ... he came to me with the plea agreement which was 27 to 60 year sentence, and he said that was the offer. The one and only offer the District Attorney was going to give me which was the max on every charge that I was being charged with as it was. So basically, it wasn't no real deal.
>
> So, we talked about it and he said the only other option I have besides going to trial would be take an open plea and the possibility that because I would be throwing myself at the mercy of the Court by taking an open plea I may get less time that way instead of going to trial and getting the max.

(N.T. 7/1/13 at 6)  His testimony clearly reveals his knowledge that he was not guaranteed a sentence which was less than the plea offer and that the Court would be able to impose any sentence it found appropriate. Defendant knew his choices and the risk involved before he chose to take this chance. Furthermore, his attorney had a reasonable basis for giving him this advice given the terms of the plea offer. In fact, Defendant suffered no prejudice as the Court did actually impose a sentence which was lower than that offered by the Commonwealth.

11

Defendant also complains that his attorney failed to investigate possible defenses with regard to his drug use and mental state at the time of the commission of these offenses. With regard to such a defense, Section 308 of the Crimes Code provides as follows:

### § 308. Intoxication or drugged condition

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa.C.S.A. §308. Under this provision, a defense on this basis was not available to Defendant in this action and could not be asserted in an effort to negate the intent element of his charges. Thus, his attorney cannot be faulted for failing to advance a meritless defense involving Defendant's use of controlled substances at the time of the offense.

An insanity defense focuses upon a defendant's capacity, at the time of the offense, to understand the nature and quality of his actions or whether he knew that his actions were wrong. 18 Pa.C.S.A. §315; *Commonwealth v. Yasipour*, 957 A.2d 734, (Pa. Super.2008), appeal denied 980 A.2d 111 (Pa. 2009). Counsel did explain the requirements of advancing this defense; however, once Defendant

12

heard what was involved, he decided that he did not want to pursue this strategy. Furthermore, even had Defendant desired to raise this defense, his situation did not fit within its strictures for both his statements to his attorney and his actions point to his knowledge of the wrongfulness of his conduct. Defendant was fully able to describe the incident and his motives for his conduct. Moreover, his attempt at suicide evidenced his appreciation that his actions were wrongful and his consciousness of guilt. *See, e.g., Commonwealth v. Sanchez,* 610 A.2d 1020 (Pa. Super. 1992), appeal denied 620 A.2d 490 (Pa. 1993). Thus, counsel was not ineffective for failing to assert this defense on Defendant's behalf.

Lastly, Defendant complains that his attorney was ineffective for failing to investigate possible mitigating circumstances for Sentencing with regard to psychiatric treatment he had undergone at Philhaven. Counsel testified that upon receiving this type of information from a client, his usual practice was to have a release signed and to obtain records from the facility. However, Defendant did not provide his attorney with such information, explaining that he did not feel that his records were relevant to Sentencing. Counsel presented all information available to him to the Court at Sentencing and cannot be found ineffective under such circumstances. Regardless, we find that Defendant suffered no prejudice as the result of this evidence not being presented at Sentencing. Even had counsel

13

submitted this evidence in an effort to mitigate Defendant's sentence, however,

there would have been no effect on the sentence imposed in light of the severity

of Defendant's conduct and the impact on his victim.