J-S68022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVINE A. CAMPBELL | : | |
| | : | |
| Appellant | : | No. 639 WDA 2019 |

Appeal from the PCRA Order Entered March 25, 2019
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000121-2012

BEFORE:   GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 10, 2020**

Devine A. Campbell appeals from the order, entered in the Court of Common Pleas of Mercer County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Upon careful review, we affirm.

We previously set forth the facts of this case as follows:

On December 30, 2011, William Basilone ("the victim") was shot and killed outside of Basilone's Bar and Restaurant, the establishment he owned.  The security cameras[1] outside the bar did not capture the shooting, but did capture the images of three individuals walking up and down Roemer Boulevard at approximately 10:30 pm.  One of the men was wearing a gray hooded sweatshirt with a Champion logo; he was identified as co-defendant Joshua Stewart ("Stewart").  The second man was

---

[*] Retired Senior Judge assigned to the Superior Court.

[Campbell],[2] wearing a plain, dark, hooded sweatshirt and faded jeans, while the third individual was wearing a camouflage jacket and was later identified as Tyl[o]r Kalenic ("Kalenic").

[1] The bar had video surveillance cameras mounted outside and inside the bar.

[2] [Campbell] was 17 years of age.

Kalenic explained that earlier that evening, he was with [Campbell] and Stewart[,] who asked him if he wanted to rob someone with them. The men went to Basilone's, and Kalenic entered the bar by himself and approached the cash register. Kalenic testified that he placed a fake order for a pizza to "[check] the place out" and see how many people were present. The video surveillance [showed] Tyree Sanders ("Sanders") walking east on Roemer Boulevard where he saw and greeted Kalenic, Stewart, and [Campbell]. As Sanders walked away, the men walked back to the parking lot of the bar. At this point, Kalenic left and went home.

Later that evening, the camera [showed] Stewart enter the bar, approach the register, and leave. Still later in the evening, the cameras [showed] two individuals, Stewart, who was wearing a gray hoodie[,] and [Campbell], wearing a dark hoodie, crossing the street and approaching the bar; both men were wearing masks. Stewart had both hands in the front pocket of his hoodie. [Campbell] pulled on the handle of the door to the bar and was unable to open it; the men then walked out of camera range. After this failed attempt to enter, the men went to the alley behind the building and removed their masks.

Testimony was presented that [Campbell] argued with Stewart, telling Stewart that the door was locked and there was no need to go on with the robbery. During the argument, the victim came around the corner. Stewart, who was unmasked, pulled a gun and fired at the victim, striking him several times. [Campbell] immediately fled the scene. The victim was pronounced dead at the hospital. Three eyewitnesses testified as to what they heard and saw from three different vantage points. Stewart and [Campbell] ran to Kalenic's house and went into the basement. All three men later got into [C.V.'s] car; [C.V.'s] sister [,O.V.,] was also present. [C.V.] drove Kalenic to a friend's house and drove [Campbell] and Stewart to Stewart's house.

- 2 -

*Commonwealth v. Campbell*, 58 WDA 2014, at 1-4 (Pa. Super. 4/27/15) (unpublished memorandum) (citations to record omitted).

Following a three-day jury trial in which he was represented by J. Jarrett K. Whelan, Esquire[3] ("trial counsel"), Campbell was convicted of one count of murder in the second degree,[4] two counts of robbery,[5] and two counts of criminal conspiracy to commit robbery.[6] On December 4, 2013, Campbell was sentenced to a term of 35 years to life in prison for the second-degree murder conviction. For the remaining charges, Campbell was given consecutive sentences of 156 months to 40 years of imprisonment, concurrent with the sentence imposed for second-degree murder. On December 18, 2013, the Honorable Christopher J. St. John denied Campbell's motion to reconsider and/or modify his sentence. On January 6, 2014, Campbell filed a notice of appeal, and ultimately this Court affirmed his judgment of sentence on November 15, 2015. Our Supreme Court denied allowance of appeal on October 27, 2015.

---

[3] Dustin Cole, Esquire, and Melissa Merchant-Calvert, Esquire, assisted attorney Whelan at Campbell's trial. N.T. PCRA Hearing, 1/30/17, at 66.

[4] 18 Pa.C.S.A. § 2502.

[5] 18 Pa.C.S.A. § 3701.

[6] 18 Pa.C.S.A. § 903.

Campbell filed a *pro se* PCRA petition on February 1, 2016. On August 19, 2016, Campbell, by and through Stanley T. Booker, Esquire, filed an amended petition for PCRA relief, alleging that trial counsel was ineffective for failing to properly impeach two Commonwealth witnesses, C.V. and Kalenic, and for failing to object to a comment[7] by the prosecutor during closing arguments. On January 27, 2017, after multiple continuances, Campbell filed a second amended PCRA petition. An evidentiary hearing was held on January 30, 2017. On March 25, 2019, Judge St. John denied Campbell's PCRA petition, finding that trial counsel had a reasonable basis for not impeaching the Commonwealth's witnesses in the manners Campbell specified, and similarly had a reasonable basis for not objecting to the prosecutor's comment. PCRA counsel filed a successful motion to withdraw as counsel on April 5, 2019, and subsequently, the court appointed Michael T. Muha, Esquire, for the instant appeal.

On April 25, 2019, Campbell, by and through Attorney Muha, filed a timely notice of appeal from the order denying PCRA relief. On May 16, 2019, Campbell filed a Pa.R.A.P. 1925(b) court-ordered concise statement of errors complained of on appeal. Campbell raises the following issues for our review:

I.      Did the PCRA court err in rejecting [Campbell's] claim that trial counsel was ineffective because trial counsel failed to properly cross-examine and/or impeach Commonwealth

---

[7] "[The victim] is shot once through the shoulder after, 'give me your money' or words to that effect, is the Commonwealth's position." N.T. Trial, 11/20/13, Vol. II, at 300.

witness [Kalenic] regarding his prior inconsistent statements?

II. Did the PCRA court err in rejecting [Campbell's] claim that trial counsel was ineffective because trial counsel failed to properly cross-examine and/or impeach Commonwealth witness [C.V.] regarding her prior inconsistent statements[,] prior criminal record, probationary status at the time of trial, and federal immunity status at the time of trial?

Brief of Appellant, at 9 (reformatted to remove indentation and numbering).

In an appeal from the denial of PCRA relief, we must determine whether the ruling of the PCRA court is supported by the record and free of legal error. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). The scope of our review is limited to the findings of the PCRA court and the evidence of the record viewed in the light most favorable to the Commonwealth as the prevailing party. *Commonwealth v. Duffey*, 889 A.2d 56, 61 (Pa. 2005). We may affirm a PCRA court's decision on any grounds if supported by the record. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010).

In order to prevail on a claim of ineffective assistance of counsel, Campbell must overcome the presumption that counsel was effective by establishing: (1) his underlying legal claim has arguable merit; (2) trial counsel's action or inaction lacked an objectively reasonable basis; and (3) trial counsel's act or omission prejudiced him. *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). "[I]t is well-settled that 'a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [tripartite]

test, the court may proceed to that element first.'" **Id.** (quoting **Commonwealth v. Lesko**, 15 A.3d 345, 374 (Pa. 2011)). "If counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective." **Commonwealth v. Williams**, 899 A.2d 1060, 1064 (Pa. 2006).

> With regard to the second element, an appellant must show that:
>
> [I]n light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests.

**Commonwealth v. Buska**, 655 A.2d 576, 582-83 (Pa. Super. 1995).

Generally, trial counsel has broad discretion regarding matters of trial strategy, including whether or not to impeach a witness, and a defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. **Id.** at 582. "The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record." **Id.**

Here, trial counsel testified at the PCRA hearing that the defense strategy was for Campbell to concede involvement in the attempted robbery and conspiracy to commit robbery, but deny involvement in the homicide. N.T. PCRA Hearing, 1/30/17, at 58, 80-81. Trial counsel's theory was that, after Campbell was unable to open the door of Basilone's Bar, he removed his mask and argued with Stewart that the robbery was off, concluding the attempt and demonstrating Campbell's intent not to engage in further crimes.

*Id.* at 42, 58, 80-81.  Prior to trial, trial counsel discussed this strategy with Campbell, who agreed to "shift [their] case" from simply arguing that the Commonwealth cannot meet its burden of proof to arguing that "[the jury] should convict him for what he did and not convict him for what he did not do." *Id.* at 58.

Campbell claims that trial counsel was ineffective for failing to impeach Kalenic regarding inconsistencies between his trial testimony and preliminary hearing testimony concerning when Campbell fled the scene of the shooting. Brief of Appellant, at 20-23.  Specifically, Kalenic testified at a preliminary hearing that Campbell ran from the alley after Stewart fired the third gunshot, that Stewart followed Campbell, and that the two arrived at Kalenic's house at the same time.  PCRA Court Opinion, 3/25/19, at 13.  At trial, Kalenic testified that following the shooting, Stewart and Campbell ran towards his house together and arrived together.  *Id.* at 12.

We agree with the PCRA court that trial counsel had an objectively reasonable basis not to impeach Kalenic regarding this inconsistency. Critically, trial counsel had elicited the desired information from two independent witnesses, Everett McClean and Gary Thomas; both McClean and Thomas testified that they saw two separate runners flee from the scene at different times.  N.T. PCRA Hearing, 1/17/13, at 43, 70.  The witnesses' description of the men's clothing supported Campbell's assertion that he fled the alley before Stewart.  *Id.* at 43.  Trial counsel testified at the PCRA hearing

that he made a "split-second decision" not to impeach Kalenic on this issue because he felt the information concerning who ran first was more compelling to the jury coming from McClean and Thomas. *Id.*

At trial, counsel cross-examined Kalenic extensively, consisting of approximately 70 pages of trial transcript. *See* N.T. Trial, 11/20/13, Vol. I, at 406-58, 464-85. Accordingly, trial counsel believed that he completely discredited Kalenic's testimony, and that any additional impeachment would be unnecessary. N.T. PCRA Hearing, 1/17/13, at 42-43. Furthermore, if trial counsel cross-examined Kalenic on this point, and Kalenic testified consistently with McClean and Thomas, it would have bolstered Kalenic's credibility on other facts unfavorable to Campbell. *See* PCRA Court Opinion, 3/25/19, at 13-14; Second Amended Petition for PCRA Relief, 1/27/17, at 6 (Kalenic identified Campbell and Stewart as the actors, placed them at the scene, witnessed the shooting, observed Campbell and Stewart fleeing the scene, and was present in C.V.'s vehicle with them afterwards).

Because trial counsel had multiple, reasonable bases for not impeaching Kalenic with his prior inconsistent statement, Campell's ineffective assistance of counsel claim on this point fails. *Williams*, *supra*, at 1064.

Campbell's remaining claims relate to trial counsel's failure to impeach C.V. at trial. Specifically, Campbell asserts that trial counsel was ineffective for failing to cross-examine C.V. on her prior inconsistent statements, her conviction for receiving stolen property (*crimen falsi*), her probationary status

at the time of trial,[8] and her grant of federal immunity at the time of trial in exchange for testimony on related crimes involving Campbell. Brief of Appellant, at 24-32. We agree with the PCRA court that, although these claims have arguable merit, Campbell has failed to prove by a preponderance of the evidence that trial counsel had no reasonable basis for choosing not to impeach C.V. during cross-examination.

Trial counsel testified at the PCRA hearing that the defense team was "happy with [C.V.'s] testimony," which they felt was "very pro defense." N.T. PCRA Hearing, 1/17/13, at 14, 26, 68, 72. Specifically, C.V. testified that when she picked Campbell up on the night of the murder, Campbell had a normal tone of voice, was not out of breath, did not admit to any crime, and did not appear nervous, excited, or scared. N.T. Trial, 11/20/13, Vol. I, at 508-09. She further testified that she did not see any blood or any weapon on Campbell, and that none of the defendants was wearing clothes consistent with the actors captured on video surveillance. *Id.* at 508-12. Trial counsel felt that the only negative aspect of C.V.'s testimony was that it placed Campbell within a few blocks of the crime scene after the shooting, which alone did not establish Campbell's guilt. N.T. PCRA Hearing, 1/17/13, at 30,

---

[8] "The parties stipulated at the evidentiary hearing that [C.V.], who was called as a Commonwealth witness at trial, had entered a guilty plea to receiving stolen property and was sentenced to two years['] probation on December 1, 2011, and that she was on probation for two years when she was called to testify at this trial in November of 2013." PCRA Court Opinion, 3/25/19, at 6 n.1.

72.  Trial counsel testified that his strategy was to "not beat [C.V.] up too much" because her testimony was generally favorable to Campbell.  *Id.* at 26, 72.  Trial counsel also believed the jury would find C.V. sympathetic because she was pregnant at the time of trial, and he feared that vigorously impeaching her might have predisposed the jury against Campbell.  *Id.* at 72-76.

In addition to this general approach to the cross-examination of C.V., trial counsel articulated specific, reasonable bases for not impeaching C.V. on her prior inconsistent statements.  C.V.'s prior inconsistent statements, relating to various contacts she had with Campbell on the night of the murder, were contained in a recorded interview with police and a transcript of proceedings before a federal grand jury.  Second Amended Petition for PCRA Relief, 1/27/17, at 5-6.  Trial counsel testified that he did not use the police recording to impeach C.V. because that interview contained statements that were "extremely negative" for the defense.  N.T. PCRA Hearing, 1/17/13, at 81.  Specifically, C.V. stated in that interview that Campbell and Stewart appeared nervous and acted strange on the night of the murder.  *Id.*  If trial counsel had impeached C.V. with statements from that interview, he would have opened the door for the Commonwealth to introduce the entire recording, which trial counsel felt would be more damaging to Campbell.  *Id.*  Moreover, in that recording, C.V. admitted that she had been lying to the police about seeing the defendants on the night of the murder and began crying, which trial counsel feared would further predispose the jury against

Campbell.  *Id.*  Thus, trial counsel had a reasonable basis for not impeaching C.V. with her prior inconsistent statements from the police interview.

Trial counsel had a similar, reasonable basis not to impeach C.V. with a prior inconsistent statement from the federal grand jury proceeding.  Again, trial counsel sought to avoid opening the door for the Commonwealth to introduce the entire transcript of the proceeding, which would have revealed that Campbell was under federal investigation for multiple robberies involving the use of weapons.  *Id.* at 75.  Trial counsel, who had represented Campbell since he was a juvenile, was representing Campbell in connection with some of those cases.  *Id.* at 74-75.  Trial counsel testified that he was comfortable with C.V.'s favorable testimony, and that his decision not to impeach her using the federal transcript was matter of "damage control."  *Id.* at 76.

Finally, we agree with the PCRA court that trial counsel had a reasonable basis for choosing not to impeach C.V. through her *crimen falsi* conviction, probationary status, and grant of federal immunity at the time of trial.  Trial counsel did not recall knowing at trial about C.V.'s *crimen falsi* conviction, that she was on probation at the time of trial, or that she had received a grant of federal immunity prior to trial.  *Id.* at 75-76.  However, trial counsel explained that, "based upon [his] assessment of [C.V.'s] testimony" at the time, he would not have used any of that information to attack C.V.'s credibility for the reasons set forth above.  *Id.*  Namely, her testimony was pro-defense, she was a sympathetic witness, and he did not want to predispose the jury against

Campbell either by vigorously impeaching C.V. or by opening the door to the information from the federal grand jury investigation. *Id.*

Campbell has failed to establish that trial counsel lacked an objectively reasonable basis for his decisions not to impeach C.V. or Kalenic in the manners specified above. Accordingly, trial counsel cannot be deemed ineffective, and Campbell is entitled to no relief. *Williams*, *supra* at 1064.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2020