J-A27045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                        : PENNSYLVANIA
                                        :
              v.                      :
                                        :
                                        :
DAVID WEAVER                    : 
                                        :
              Appellant       : No. 1711 MDA 2022

Appeal from the PCRA Order Entered December 2, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001552-2017

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED FEBRUARY 01, 2024**

Appellant, David Weaver, appeals from the December 2, 2022, order entered in the Court of Common Pleas of Lancaster County, which denied Appellant's first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing. In addition to a counseled appellate brief, Appellant has filed a *pro se* Application to Remand for an evidentiary hearing regarding layered claims of ineffectiveness. After a careful review, we deny Appellant's Application to Remand and affirm the PCRA court's order.

The relevant facts and procedural history are as follows: The Commonwealth filed an Information charging Appellant with various sex

---

[*] Former Justice specially assigned to the Superior Court.

crimes involving his minor niece and nephew. On August 29, 2018, Appellant, who was represented by Christopher Sarno, Esquire, proceeded to a jury trial. This Court previously summarized the evidence offered at the jury trial as follows:

At trial, [Appellant's] niece testified that when she was seven years old, on several occasions, [Appellant] sat next to her on the couch, placed his hand down her pants, and rubbed her vagina. She described one occasion as follows:

Q. When you say he was moving his finger in a circular motion, like, where on your body was that?

A. My vagina.

Q. Do you know if he touched the outside or the inside or something else.

A. Not like inside, but not like, I don't know how to explain it.

Q. I know this is super hard and awkward. As a 7-year-old, it would have looked like almost two bumps on your body, is that fair?

A. Yes.

Q. Would he have been on top of the bumps or in between the bumps or something else?

A. Like, in between the bumps.

Q. And he was rubbing in a circular motion?

A. Yeah.

N.T., 8/29/18, at 179.

The Commonwealth also presented the testimony of Sergeant Kyle Hosking, who had interviewed [Appellant]. Sergeant Hosking testified that when he asked [Appellant] about the allegations, [Appellant] responded that he did not know why the victims would make such allegations, "and that they were potentially misconstruing his roughhousing and playing with sexual misconduct." N.T., 8/30/18, at 107. [Appellant] told Sergeant Hosking that he had trouble remembering things from that period, due to a head injury and frequent heavy drinking. ***Id.*** at 107-08….[Appellant] told Sergeant Hosking, "I can't believe I'd

- 2 -

do something like that," and repeatedly stated that because he could not remember what happened, "anything is possible." *Id.* at 108, 110.

***Commonwealth v. Weaver***, No. 767 MDA 2019, at *1-3 (Pa.Super. filed 9/1/20) (unpublished memorandum) (footnote omitted). Appellant did not testify at trial.

At the conclusion of the trial, the jury convicted Appellant of aggravated indecent assault-victim less than 13 years of age, corruption of minors, and indecent assault[1] with regard to his niece; however, the jury found Appellant not guilty of the charges relating to his nephew. The trial court ordered Appellant to undergo assessment by the Sex Offender Assessment Board ("SOAB") to determine if he is a sexually violent predator ("SVP") as defined by the Sex Offender Registration and Notification Act ("SORNA").[2] Appellant filed a motion to bar the SVP assessment and any registration under SORNA since his offenses occurred before SORNA's effective date. Appellant alleged application of SORNA to his case would be an *ex post facto* violation.

The trial court held that the SVP motion was moot because the SOAB found that Appellant did not meet the requirements. However, the trial court granted Appellant's motion as to registration under SORNA. The trial court determined Appellant was nonetheless subject to lifetime registration under a

---

[1] 18 Pa.C.S.A. §§ 3125(a)(7), 6301(a)(1)(ii), and 3126(a)(7), respectively.

[2] 42 Pa.C.S.A. §§ 9799.10-9799.42.

prior registration law, Megan's Law II, and provided Appellant with notification of his registration requirements under that law. Additionally, the trial court imposed an aggregate sentence of five years to ten years in prison, and Appellant filed a timely direct appeal to this Court.

On appeal, Appellant contended the evidence was insufficient to sustain his conviction for aggravated indecent assault-victim less than 13 years of age; the trial court erred in failing to grant Appellant's request for a mistrial due to prosecutorial misconduct committed during closing arguments; and the trial court erred in ordering Appellant to register under Megan's Law II. This Court found no merit to Appellant first and second issues; however, we held the trial court erred in ordering Appellant to register under Megan's Law II. Rather, we held SORNA was applicable to Appellant's case.

Specifically, we held:

> [Appellant's] final issue involves his registration as a sex offender. By way of background, SORNA took effect on December 20, 2012, the day Megan's Law expired. In 2017, the Pennsylvania Supreme Court held that SORNA is punitive in effect, and therefore retroactive application of SORNA to an offender whose applicable offenses occurred before SORNA's effective date violates the *ex post facto* clauses. **See Commonwealth v. Muniz**, [640 Pa. 699,] 164 A.3d 1189 (2017). In response, the legislature twice amended SORNA in 2018. Relevant here, the General Assembly added Subchapter I to the Sentencing Code, which it intended to be applied to those offenders who committed offenses prior to December 12, 2012, SORNA's effective date.[3]

---

[3] As our Supreme Court noted:
*(Footnote Continued Next Page)*

- 4 -

Following his convictions, [Appellant] argued to the trial court that the amendments to SORNA do not pass constitutional muster, and his registration under Subchapter I would still be an *ex post facto* violation. The trial court agreed and provided [Appellant] notification that he would be subject to registration under Megan's Law. [Appellant] argues this was error, as Megan's Law expired in 2012. He further contends that he should not be subject to registration under Subchapter I, as it is punitive, and its application would violate the *ex post facto* clauses of the state and federal constitutions.

We agree that the trial court erred in providing notification that, upon [Appellant's] release from prison, he would be subject to registration under Megan's Law, as it is expired. However, [Appellant's] issue regarding the applicability of SORNA to his case has since been settled, as our Supreme Court recently held that Subchapter I does not constitute criminal punishment, and its application will not support *ex post facto* claims. **See Commonwealth v. Lacombe**, 660 Pa. 568, 234 A.3d 602 (2020).

**Weaver**, No. 767 MDA 2019, at *11-12 (some citations and footnote omitted)

(footnote added).

---

In Act 10, [the General Assembly] split SORNA, which was previously designated in the Sentencing Code as Subchapter H into two subchapters. Revised Subchapter H applies to crimes committed on or after December 20, 2012, whereas Subchapter I applies to crimes committed after April 22, 1996, but before December 20, 2012. In essence, Revised Subchapter H retained many of the provisions of SORNA, while Subchapter I imposed arguably less onerous requirements on those who committed offenses prior to December 20, 2012, in an attempt to address th[e] [Supreme] Court's conclusion in **Muniz** that application of the original provisions of SORNA to these offenders constituted an *ex post facto* violation.

**Commonwealth v. Torsilieri**, 659 Pa. 359, 232 A.3d 567, 580-81 (2020).

Accordingly, on September 1, 2020, this Court vacated and remanded for the trial court to provide new notification of Appellant's registration requirements under Subchapter I of SORNA. *See Weaver*, *supra*. We affirmed in all other respects. *See id.* Appellant did not file a petition for allowance of appeal with our Supreme Court. On December 7, 2020, Appellant was advised of his registration requirements under Subchapter I of SORNA.

Thereafter, on October 1, 2021, represented by new counsel, Todd M. Moser, Esquire, Appellant filed a timely PCRA petition wherein he averred trial counsel was ineffective in failing to present character witnesses on Appellant's behalf during the jury trial. Specifically, Appellant contended he has "four available character witnesses who would have testified to [Appellant's] reputation in the community for being peaceful and law-abiding." PCRA Petition, filed 10/1/21, at 5.

The Commonwealth filed a response to Appellant's PCRA petition indicating Appellant's ineffectiveness claim lacked arguable merit. Specifically, the Commonwealth noted Appellant did not provide the identity of the alleged character witnesses. On November 8, 2021, Appellant filed a counseled amended PCRA petition wherein he identified four alleged character witnesses: Barbara Heinly, Gary Heinly, Nina Fisher, and Holly Williams.

On April 25, 2022, Appellant proceeded to a PCRA evidentiary hearing at which Appellant's trial counsel, Attorney Sarno, as well as Barbara Heinly, Gary Heinly, Holly Williams, Nina Fisher, and Appellant testified.

Relevantly, Attorney Sarno testified he met "quite often" with Appellant prior to trial, and they discussed trial strategy. N.T., 4/25/22, at 4. Attorney Sarno confirmed he and Appellant discussed character witnesses. *Id.* at 5. Specifically, Attorney Sarno testified as follows on direct examination by Appellant's PCRA counsel:

Q. And did you ask him or explain to him what a character witness was?

A. We did discuss character witnesses.

Q. What was that discussion?

A. We discussed possible witnesses a couple of times leading up to trial. Now, what happened is that we would be scheduled for trial and then it would be continued. So, we did this over a course of—it wasn't exactly right before our actual trial, but we did discuss it. We discussed the possibility of anybody who would be a character witness and what they would have to say.

Q. Okay. Do you remember if [Appellant] provided you with any names of people?

A. No, he did not.

Q. Do you remember whether he said he had anybody he could call?

A. No. So, usually when we met there was more than just [Appellant] there, it was his family, so his mother, his wife, his father. And I know we discussed character witnesses, and we mentioned some people. I don't know who actually brought up any names, but we ultimately settled on the fact that we didn't have anybody that wasn't—that would be good enough to do it.

Q. When you say good enough to do it, what do you mean by that?

A. So, most of it was family. And we thought that was probably not the best move—I thought that was probably not the best move[.] I don't recall anybody being mentioned outside of the family so that's—mostly it was—I know Cheryl Weaver wanted to testify, and we needed her for a fact witness. So, that's where we went with her.

- 7 -

But as far as other character witnesses outside the family, I think they were going to look into it, and I think what happened is kind of what happens in these types of cases where you have a lot of people who are supportive but when it comes down to will they actually testify, they didn't—they weren't going to do that.

\*\*\*

Q. Okay. Was it—did you communicate to [Appellant] that he needed someone other than family to testify as character witnesses?

A. Normally, I would say to somebody that they need somebody other than family and somebody that would have known you at that time.

Q. Known you at which time?

A. The time in and around the alleged offenses.

*Id.* at 5-8.

Attorney Sarno confirmed that character witnesses, who would have been willing to testify to Appellant's reputation for being law-abiding and peaceful, would have been helpful to the defense during trial. *Id.* at 8.

Attorney Sarno testified he informed Appellant about jury instructions, and generally, this would include that, if character witnesses testified, the trial court would give jury instructions allowing the jury to find Appellant not guilty if they believed his character witnesses. *Id.* He noted he asked Appellant and his family to gather supportive witnesses for the sentencing hearing. *Id.* Attorney Sarno confirmed that Holly Williams wrote a letter to the sentencing judge on behalf of Appellant. *Id.*

On cross-examination by the assistant district attorney ("ADA"), Attorney Sarno testified that, when a defendant and his family provide him

with a list of character witnesses, he will meet with the proposed witnesses to determine if they would be helpful to the defense. *Id.* at 9-10. However, Attorney Sarno specifically testified that, in the instant case, neither Appellant nor his family provided him with any names of potential character witnesses. *Id.* at 10. Specifically, the relevant exchange occurred between the ADA and Attorney Sarno:

> Q. And you did testify that you discussed trial strategy. Did he or his family members offer you any list of potential character witnesses to call?
>
> A. No, my recollection is that they were going to look—think about it and come back to me with names. And they never came back with character witness names.
>
> Q. Did they give you an explanation for why they didn't come back with a list of names?
>
> A. No.

*Id.*

Attorney Sarno confirmed that some of Appellant's family members indicated they would testify as character witnesses; however, Attorney Sarno decided not to call the family members during trial. *Id.* He testified:

> I just think that a jury wouldn't really believe what a family member would say, that their relative is a good person, law-abiding, obviously they are there in support. And I just think it's too insular too. It's not really community reputation. You want somebody who knows them within the community, not just someone within the family. Typically, I stay away from family character witnesses.

*Id.* at 11.

Attorney Sarno indicated that several non-family members provided letters on Appellant's behalf for purposes of the sentencing hearing. *Id.*

However, he specifically confirmed that "none of the people that wrote those letters made themselves available to testify at trial as character witnesses[.]" *Id.*

Ms. Heinly testified she met Appellant and his wife over six years ago at church. *Id.* at 14. She testified that, within the church community, Appellant has a reputation for being peaceful and law-abiding. *Id.* She indicated that, if she had been asked to do so, she would have testified at trial on behalf of Appellant. *Id.* at 15. Ms. Heinly acknowledged that she did not know the dates on which Appellant's trial was held, but she would have made herself available. *Id.*

Mr. Heinly testified he has known Appellant since May of 2017. *Id.* at 19. The Heinly family and Appellant's family got together several times, and he knows Appellant from church. *Id.* Mr. Heinly testified Appellant has an "excellent" reputation, and people in the church have been surprised to hear "what's happened." *Id.* at 20. He indicated that, if he had been asked, he would have been willing to testify on behalf of Appellant at trial. *Id.*

Ms. Williams testified she has known Appellant for fifteen years, and she met him through his wife with whom Ms. Williams is "good friends." *Id.* at 22. Ms. Williams used to swim in Appellant's family's pool, and she has interacted with him "often." *Id.* She indicated she knows other people in the community, who also know Appellant, and Appellant has a "reputation for being peaceful and law-abiding." *Id.* at 25. She testified that, had she been

asked, she would have been willing to testify on behalf of Appellant during his trial, and she was available to do so. *Id.* She noted she submitted a letter in support of Appellant for the sentencing judge. *Id.*

Ms. Fisher testified she has known Appellant for eleven years, and she met him through his wife. *Id.* She indicated she saw Appellant at the Lititz Senior Center, and he was "knowledgeable with computers." *Id.* She knows other people within the community who also know Appellant, and Appellant has a reputation for being peaceful and law-abiding. *Id.* She indicated he is known as a "very loving husband and father." *Id.* She testified that, if asked to do so, she would have been willing to testify on behalf of Appellant at trial. *Id.* She noted she submitted a letter for the sentencing judge on behalf of Appellant. *Id.*

Appellant testified he met with Attorney Sarno "more than six" times prior to trial. *Id.* at 28. Appellant confirmed Attorney Sarno talked to him about character witnesses, and Attorney Sarno advised him that the character witnesses should know him. *Id.* at 29. Appellant admitted he did not provide Attorney Sarno with the names of any character witnesses because he "kind of lost contact with all of the people that [he] knew directly from the past." *Id.* He indicated he "came up empty." *Id.*

Regarding the four witnesses who testified at the PCRA evidentiary hearing, Appellant indicated he "knew [them] through his wife." *Id.* He testified that, had he known they would testify for him, he would have asked

Attorney Sarno to call them as character witnesses. *Id.* at 29-30. He indicated that, had he known that Attorney Sarno "would have taken whoever [he] could give him," including his wife's friends, as character witnesses, he would have provided the names of the four people, who testified at the PCRA evidentiary hearing. *Id.* at 30.

By opinion and order entered on December 2, 2022, the PCRA court denied Appellant's PCRA petition, and this timely, counseled appeal followed.[4]

On appeal, Appellant presents the following issue in his "Statement of the Questions Involved" (verbatim):

1. Did the PCRA Court err when it denied Defendant's claim that trial counsel was ineffective for failing to call favorable character witnesses?

Appellant's Brief at 4 (suggested answer omitted).

_____

[4] We note the trial court filed an order on December 19, 2022, directing Appellant to file a Pa.R.A.P. 1925(b) statement, but Appellant did not file a Rule 1925(b) statement. Pennsylvania Rule of Appellate Procedure 1925(b)(3)(iii) provides that a Rule 1925(b) order must contain "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the statement." Pa.R.A.P. 1925(b)(3)(iii). Where the trial court's order directing the filing of the statement does not strictly comply with the requirement of Pa.R.A.P. 1925(b)(3)(iii), the order is unenforceable. *See Commonwealth v. Stroud*, 298 A.3d 1152 (Pa.Super. 2023).

In the case *sub judice*, the trial court's Rule 1925(b) order was deficient in that it did not include the information required under subsection 1925(b)(3)(iii). Accordingly, we decline to find waiver for Appellant's failure to file a Rule 1925(b) statement. *Id.* Further, although we could remand for Appellant to file a Rule 1925(b) statement, and the PCRA court to file a responsive opinion to address the merits, we find it unnecessary to do so. *Id.* The PCRA court set forth its analysis of the issue raised on appeal in its December 2, 2022, opinion, and thus, our review has not been hampered. *Id.*

On appeal, Appellant claims trial counsel was ineffective in failing to call favorable character witnesses to attest at trial to Appellant's good reputation in the community for being peaceful and law-abiding. Specifically, Appellant notes that, during the PCRA evidentiary hearing, "four witnesses testified that they were willing to offer good character testimony for [Appellant's] trait of peacefulness and law abidingness at trial[.]" Appellant's Brief at 9. Appellant suggests that trial counsel knew or should have known about the existence of these four witnesses. *Id.*

In this vein, Appellant contends trial counsel should have "pushed the issue" of character witnesses harder with Appellant and his family, and trial counsel should have forced Appellant to present him with names of favorable non-family character witnesses. *Id.* at 10. Appellant suggests that trial counsel's advice "confused" him as to the people who would be satisfactory character witnesses. *Id.*

Initially, we note our standard of review for an order denying PCRA relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error. *Commonwealth v. Sattazahn*, 597 Pa. 648, 952 A.2d 640, 652 (2008). "We must accord great deference to the findings of the PCRA court, and such findings will not be disturbed unless they have no support in the record." *Commonwealth v. Scassera*, 965 A.2d 247, 249 (Pa.Super. 2009) (citation omitted).

As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In reviewing Appellant's ineffective assistance of counsel claims, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010).

To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, *supra*, 10 A.3d at 291 (citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

*Commonwealth v. Johnson*, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted). *See Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test

requires rejection of the claim of ineffectiveness.") (citation omitted)).  "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief."  *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*) (citation omitted).

Regarding the reasonable basis prong of the ineffective assistance of counsel test, our Supreme Court has relevantly stated the following:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest….[T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests."  Our evaluation of counsel's performance is "highly deferential."

*Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 463 (2016) (citations and quotations omitted).

Further,

> To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted). *See Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004) ("[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is,

that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings.") (quotation omitted)).

Notably, an attorney's failure to call certain witnesses is not ineffectiveness *per se*. **Commonwealth v. Cox**, 603 Pa. 223, 983 A.2d 666, 693 (2009).

> To establish ineffectiveness under such a claim, the petitioner must establish:
>
> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Puksar**, 597 Pa. 240, 951 A.2d 267, 277 (2008).

Here, in rejecting Appellant's ineffective assistance of counsel claim, the PCRA court relevantly indicated the following:

> [Appellant] seeks relief alleging that trial counsel was ineffective for failing to call character witnesses on his behalf. Specifically, [Appellant] contends that four character witnesses would have testified at trial….[A]ll four witnesses testified at the [PCRA] evidentiary hearing. Each witness testified to their relationship with [Appellant], to their understanding of [Appellant's] reputation in the community for being peaceful and law-abiding, and that they each would have been willing to testify to such at his trial had it been requested.
>
> ***
>
> [T]he testimony of the four character witnesses at the [PCRA] evidentiary hearing satisfies elements (1), (2), and (4) of the test for ineffectiveness laid out in [**Puksar**]. It is in the third element, that trial counsel "knew of, or should have known of, the existence of the witnesses," that the contention in this matter lies,

and where, ultimately, [Appellant's] request for post-conviction relief fails.

It is well settled that the reasonableness of counsel's investigative actions depends upon the information supplied by the accused. ***Commonwealth v. Walker***, 540 Pa. 80, 656 A.2d 90, 98 (1995). At the [PCRA] evidentiary hearing, trial counsel, Christopher Sarno, credibly testified that he discussed the need for potential character witnesses with [Appellant] and his family on multiple occasions leading up to trial. Trial counsel advised [Appellant] that a list should be created of people, other than family members, who knew [Appellant] at the time of the incident and would be willing to testify to his good character. At the [PCRA] hearing, trial counsel explained that while he considered calling familial character witnesses, he prefers character witnesses outside of the accused's family because he views family members as "too insular" and not as representative as one's reputation in the community as non-familial witnesses; therefore, hindering the believability of familial character witnesses.

Despite these discussions and trial counsel's advice, no such list was provided by [Appellant]. Instead, [Appellant] alleges that there was confusion as to who he could call as character witnesses. Specifically, [Appellant] testified that trial counsel instructed him that he could only call character witnesses that he knew directly, and [he] had not met through his wife. Notwithstanding the inconsistency of [Appellant's] testimony with trial counsel's testimony as to how he generally advises clients, two of his now-presented character witnesses, Mr. and Mrs. Heinly, testified that they knew [Appellant directly] and his family through church, not through [Appellant's] wife. Further, the remaining two now-presented character witnesses, while testifying they had met [Appellant] through his wife, also testified to having known and interacted with [Appellant] on numerous occasions over a span of eleven and fifteen years, respectively. Assuming, *arguendo*, that trial counsel did instruct [Appellant] that character witnesses could not be people whom he had met through his wife, such instruction should not have deterred [Appellant] from providing Mr. and Mrs. Heinly to trial counsel as potential character witnesses. In contrast, assuming, *arguendo*, that trial counsel did not deviate from his normal instruction to clients about character witnesses and never gave the "know you directly, not through your wife" instruction, [Appellant] should not have been deterred from providing all four of the now-presented character witnesses as none of them are members of [Appellant's]

- 17 -

family. In either regard, the failure to provide any of these four character witnesses for trial was the failure of [Appellant's] alone.

Lastly, [Appellant] argues that trial counsel was ineffective for failing to "push the issue" of character witnesses. [Appellant], however, failed to provide counsel with the names of potential character witnesses. Moreover, trial counsel credibly testified that [A]ppellant never provided him with the names of the four character witnesses, who appeared at the [PCRA evidentiary] hearing, and these witnesses never communicated [to trial counsel] they were available for [Appellant]. Our Supreme Court has held, "[a]n accused cannot refuse to cooperate with counsel in preparation of a particular trial strategy and then argue counsel's ineffectiveness for failing to purse that course of action." *Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189, 196 (1994).

PCRA Court Opinion, filed 12/2/22, at 5-8.

We agree with the PCRA court's sound reasoning. Specifically, based on Attorney Sarno's testimony, which the PCRA court found credible, Attorney Sarno communicated with Appellant and his family about the need for character witnesses. However, Attorney Sarno established that, despite requesting a list of character witnesses, neither Appellant nor his family provided him with a list. In particular, he noted that he was not advised prior to or during trial that the proffered four character witnesses, who testified during the PCRA evidentiary hearing, existed or would have been willing to testify on behalf of Appellant during trial. He simply "had no way of knowing they were available." *Id.* at 8.

Accordingly, we agree with the PCRA court that Appellant "has failed to prove that counsel knew of, or should have known of, the existence of the four character witnesses." *Id.* We agree with the PCRA court that Appellant has

"failed to satisfy the ineffectiveness test laid out in [***Puksar***] while simultaneously proving that counsel had a 'reasonable strategic basis' for not calling the now-presented character witnesses at trial-he was unaware of their existence." PCRA Court Opinion, filed 12/2/22, at 8 (citation omitted). Accordingly, Appellant is not entitled to relief on his ineffective assistance of counsel claim.

However, this does not end our inquiry in this case since Appellant has filed a *pro se* Application to Remand for an evidentiary hearing. Specifically, in his Application to Remand, Appellant contends PCRA counsel was ineffective in failing to raise various claims of trial counsel's ineffectiveness.[5]

---

[5] Appellant's assertions—that PCRA counsel was ineffective for failing to raise issues regarding trial counsel's ineffectiveness—presents layered ineffectiveness claims. "Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." ***Commonwealth v. Parrish***, ___ Pa. ___, 273 A.3d 989, 1003 n.11 (2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." ***Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa.Super. 2010).

Relevantly, in ***Commonwealth v. Bradley***, ___ Pa. ___, 261 A.3d 381 (2021), our Supreme Court held that a PCRA petitioner may "after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Id.*** at 401. The ***Bradley*** Court provided:

> In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further

*(Footnote Continued Next Page)*

- 19 -

First, Appellant contends that, after this Court remanded on direct appeal for the application of SORNA, trial counsel should have raised the issue before the trial court of whether the application of SORNA violated the *ex post facto* clause. He further contends PCRA counsel should have raised this claim of trial counsel's ineffectiveness in the PCRA petition. However, given that on direct appeal this Court held that such application would not violate the *ex post facto* clause, there is no arguable merit to this claim. **See Weaver**, **supra**. **See also Stewart**, 84 A.3d at 707 ("A claim has arguable merit where the factual averments, if accurate, could establish cause for relief.") (citation omitted)). Thus, neither trial counsel nor PCRA counsel may be found ineffective on this basis. **See Burkett**, **supra**.

Next, Appellant contends that, since he was subject to Revised Subchapter H of SORNA, trial counsel was ineffective in failing to challenge whether Revised Subchapter H violated the separation of powers doctrine and/or created an irrebuttable presumption implicating his right to reputation protected by the Pennsylvania Constitution. He contends PCRA counsel was

_____

development of the record and for the PCRA court to consider such claims as an initial matter….[W]here there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

*Id*. at 402 (internal citations, quotations, footnote, and brackets omitted).

In the case *sub judice*, as discussed in depth *infra*, Appellant has failed to demonstrate that his ineffective assistance of PCRA counsel claims merit a remand.

ineffective in failing to raise this issue of trial counsel's ineffectiveness in his PCRA petition. However, given that on direct appeal this Court held that Subchapter I of SORNA was applicable to Appellant, and there is no indication Appellant was subject to Revised Subchapter H on remand, we find no arguable merit to this claim. *See Weaver*, *supra*. Thus, neither trial counsel nor PCRA counsel may be found ineffective on this basis. *See also Burkett*, *supra*.

Additionally, Appellant suggests trial counsel was ineffective in failing to call an expert witness to testify that Appellant has a mental infirmity from a prior head injury. Further, he alleges PCRA counsel was ineffective in failing to raise this issue of trial counsel's ineffectiveness in the PCRA petition. However, as indicated *supra*:

> To establish ineffectiveness under such a claim, the petitioner must establish:
>
> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Puksar*, *supra*, 951 A.2d at 277.

Here, Appellant baldly claims trial counsel was ineffective since "he did not procure [an] expert witness," who would have testified about Appellant's alleged mental infirmity. Appellant's Application, filed 7/5/23, at 20. Appellant has not identified any expert, who was willing to testify as Appellant

now desires. Simply put, he has not proffered that such a witness existed, was available to testify for the defense, or was willing to testify for the defense. Accordingly, neither trial counsel nor PCRA counsel may be deemed ineffective on this basis. **Burkett**, **supra**.

Furthermore, Appellant claims trial counsel was ineffective in failing to investigate whether an expert witness would confirm that Appellant had suffered a previous head injury. He claims PCRA counsel was ineffective in failing to raise this issue in the PCRA petition. However, we conclude Appellant has failed to demonstrate that he was prejudiced in this regard.

Specifically, during trial, Detective Hosking admitted that, during the police interview, Appellant informed him he had a previous brain injury. N.T., 8/30/18, at 107-10. Further, Appellant's mother testified at length about Appellant suffering a head injury when he was seventeen years old after he fell from a cliff. **Id.** at 191-94. She testified about the changes she has seen in Appellant since his injury. **Id.** Moreover, Appellant's wife informed the jury that Appellant had suffered a brain injury, which mentally and physically affects his life every day. **Id.** at 164-66.

Accordingly, Appellant has failed to demonstrate that he was prejudiced since an expert's testimony that Appellant suffered a head injury when he was seventeen years old would have been merely cumulative of the evidence offered by the detective, Appellant's mother, and Appellant's wife. **See Spotz**, **supra** (setting forth the standard for actual prejudice). Accordingly,

neither trial counsel nor PCRA counsel may be deemed ineffective on this basis. ***Burkett***, ***supra***.

Moreover, Appellant suggests trial counsel should have investigated whether an expert would have "better explained the effects of [Appellant's] traumatic brain injury on his ability to formulate a knowing response to police questioning….[since Appellant's] issues made him more likely to be coerced." Appellant's Application, filed 7/5/23, at 16, 29. He suggests PCRA counsel was ineffective in failing to raise this issue in the PCRA petition.

However, notably, in his Application to Remand, regarding his claim counsel was ineffective in failing to perform "the proper investigation into interviewing and procuring [an] expert witness," Appellant admits he "probably cannot meet the prejudice prong." ***Id.*** at 31. In any event, we note that, during trial, Detective Hosking admitted Appellant informed him during the interview that he did not remember much about the time at issue due to, *inter alia*, his previous head injury. N.T., 8/30/18, at 107. Also, Detective Hosking specifically testified Appellant did not admit to the sexual allegations. ***Id.*** Accordingly, we conclude Appellant has failed to demonstrate he was prejudiced. ***See Spotz***, ***supra*** (setting forth the standard for actual prejudice). Consequently, neither trial counsel nor PCRA counsel may be deemed ineffective on this basis. ***Burkett***, ***supra***.

Moreover, Appellant baldly contends that trial counsel should have called into question the credibility of Detective Hosking. He contends

Detective Hosking has been "investigated for nefarious activity while employed by the department that was swept under the rug[.]" Appellant's Application, filed 7/5/23, at 25. He further claims PCRA counsel should have presented this claim in the PCRA petition.

This bald assertion does not warrant further review. In any event, Appellant admits that the alleged "nefarious activity" occurred after Appellant's trial, and it is unrelated to Appellant's case. *Id.* Simply put, Appellant has failed to demonstrate how trial counsel was ineffective in failing to question Detective Hosking about events, which allegedly occurred after and unrelated to Appellant's trial. **See Ali**, **supra**. Thus, PCRA counsel may not be deemed ineffective on this basis. **Burkett**, **supra**.

For all of the foregoing reasons, we deny Appellant's Application to Remand, which he filed on July 5, 2023.[6] Furthermore, we affirm the PCRA court's December 2, 2022, order, which denied Appellant's PCRA petition.

Application to Remand DENIED; Order AFFIRMED.

---

[6] Moreover, we note Appellant filed with this Court an application to exceed the word limit as it applies to his Application to Remand. Therein, he requests we consider all of the arguments presented in his Application to Remand. Inasmuch as we have considered all of the arguments, we grant Appellant's application to exceed the word limit; however, as indicated *supra*, we find Appellant is not entitled to relief as to the claims raised in his Application to Remand.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>02/01/2024</u>